[Crim. No. 2150. Second Appellate District, Division One.—May 4, 1932.]

THE PEOPLE, Respondent, v. JAY BULLOCK, Appellant.

William W. Larsen and Leiland R. Shaw for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

TAPPAAN, J., *pro tem.*—The defendant was tried upon four counts of issuing checks without sufficient funds and two counts of forgery. The jury's verdict was guilty upon all six counts. This appeal is from the judgment on the verdicts and from the order of the court denying defendant's motion for a new trial.

The evidence discloses that the defendant made use of the same general plan in all the transactions involved in the charges made against him. In each instance the defendant opened a checking account with a bank by depositing with the bank a check drawn by him upon a bank that was without the state of California. Some of these checks so deposited purported to be certified by the bank upon which they were drawn. In some cases of the accounts so opened by the defendant, he returned and attempted to draw against the account. In one instance he did withdraw funds from such an account. In all the deposits so opened by defendant, the checks with which the accounts were opened were in due course of business returned unpaid and duly protested. The accounts in the several banks so opened by defendant, no two in the same institution, were opened in different names and different addresses were given. The prosecution introduced testimony that the checks and other instruments alleged to have been written by defendant were all written by the same person. The defendant produced a fellow resident of the county jail, who testified that they were not written by the same person. The question of the verity of this expert testimony is one of fact for the jury.

■ From an examination of the record here, there is found ample evidence to support all of the verdicts rendered as against defendant, and to this evidence defendant presents objection only to that phase of the evidence involving the question as to the fact that the various checks presented by defendant were fictitious and drawn against nonexistent funds. The prosecution in all instances, to support this necessary element of the charges, introduced in evidence ''Protests'' of the several instruments. This method of proof of this fact in actions of a civil nature has been sanctioned from time immemorial. It is recognized in such cases by both common-law and statutory enactment. In matters involving criminal charges, section 476a of the Penal Code, as amended in 1929, made provision for this class of evidence. The constitutionality of this section is here attacked by defendant. The section referred to reads in part as follows:

''Where such check, draft or order is protested, on the ground of insufficiency of funds or credit, the notice of protest thereof shall be admissible as proof of presentation, nonpayment and protest and shall be *presumptive evidence* of knowledge of insufficiency of funds or credit with such bank or depositary, or person, or firm, or corporation.

''The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary or person or firm or corporation for the payment of such check, or draft, or order.'' (The section as enacted was not italicized.)

■ Defendant states his position as follows: ''Our contention that the defendant was deprived of the right to due process of law is based wholly upon the fact that the defendant, upon trial, was not confronted by the witnesses against him: that is to say, those witnesses whom the State must necessarily have introduced in order to prove the charges made.''

The contention as advanced by defendant here denies the power of the legislature to provide for and create presumptions in the law of evidence. This power is now universally recognized by the courts, both state and federal. In the case of *Casey* v. *United States*, 276 U. S. 413, at page 418 [72 L. Ed. 632, 48 Sup. Ct. Rep. 373], it is said in this connection: ''It is consistent with all the constitutional pro-

tections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government.'' That defendant had a deposit in some banks situated at a distant place and that he had on deposit with such banks sufficient funds to pay the check that he drew thereon were facts that were peculiarly within defendant's knowledge. ''The general power of the legislature to create legal presumptions of evidence and also presumptions that are not evidence in a proper sense, but simply regulations of the burden of proof are fully considered in *Casey* v. *United States*, and cases cited therein. The law, as therein observed, is full of presumptions. Nor are we forced, in sustaining the legislation in the instant case, to go as far as courts may properly go, as was said in *Yee Hem* v. *United States, supra:* 'If the effect of the legislative act is to give to the facts from which the presumption is drawn an artificial value to some extent it is no more than happens in respect of a great variety of presumptions not resting upon statute.' (Citing *Dunlop* v. *United States*, 165 U. S. 486 [41 L. Ed. 799, 17 Sup. Ct. Rep. 375]; *Wilson* v. *United States*, 162 U. S. 613 [40 L. Ed. 1090, 16 Sup. Ct. Rep. 895, see, also, Rose's U. S. Notes].)'' (*People* v. *Osaki*, 209 Cal. 169, 194 [286 Pac. 1025].) The quoted decision, *Yee Hem* v. *United States*, is to be found at 268 U. S. 178 [69 L. Ed. 904, 45 Sup. Ct. Rep. 470]. This doctrine was approved also in the cases of *People* v. *Bruno*, 209 Cal. 782 [286 Pac. 1037], and *People* v. *Guzman*, 209 Cal. 783 [286 Pac. 1037].

The legislature in amending section 476a of the Penal Code was, without doubt, actuated by the decision of the Supreme Court in the case of *People* v. *Frey*, 165 Cal. 140 [131 Pac. 127, 129]. In this the doctrine of *ab inconvenienti* was urged by the prosecution, and in commenting upon that argument the court said: ''If practical difficulties are involved, that is a matter for legislative adjustment.'' The defendant objects that the notices of protest were not in proper form. This court has examined the notices of protest introduced at the trial and made exhibits therein. The protests are in all instances in a form that complies both with the law of the state wherein they were made and executed, and also with the law of this state. (Civ. Code,

sec. 3233 et seq.) They were all properly authenticated by the signature of the notary public who executed them, and in all cases, the notary public has attached to them his seal of office. Our courts are required to take judicial notice of the seals of notaries public. (Code Civ. Proc., sec. 1875, subd. 7.) The instruments introduced in evidence were the original documents and not copies. No statute requiring any further authentication of these instruments other than the signature and seal of the notary has been cited to the court or found by this court. The proof of instruments in this manner is not new or novel. (Civ. Code, sec. 1182.) In any event, as defendant at the time of trial failed to make any specific objection to the form or sufficiency of the notices, he may not now and for the first time, make that objection. (*Pratt* v. *Pratt,* 43 Cal. App. 261, 278 [184 Pac. 956].)

■ Defendant urges that the intent to defraud, an element of the crimes with which defendant stands charged, is not established by the evidence. In the two cases where defendant is charged with forgery, the evidence establishes that defendant withdrew substantial sums as against the checks. In the other cases, there is evidence of a substantial character that defendant attempted to withdraw funds from some of the accounts opened by him. Under section 476a of the Penal Code, it is immaterial whether financial detriment be suffered; the gist of the offense is the fraudulent intent with which the check was drawn or delivered and knowledge by the person issuing it that at the time he was without funds or credit in the bank upon which the check was so drawn. (*People* v. *Wilbur,* 33 Cal. App. 511 [165 Pac. 729]; *People* v. *Hamby,* 55 Cal. App. 37 [202 Pac. 907]; *People* v. *Cortez,* 108 Cal. App. 111 [290 Pac. 1083].) The evidence was sufficient to support the jury's verdict upon this question of fact. There is a presumption that an unlawful act was done with an unlawful intent, and that a person intends the ordinary consequences of his voluntary act. (Code Civ. Proc., sec. 1963, subds. 2, 3.) The defendant must have known that the ordinary course of business would be followed by the banks, and that the checks deposited by him would return unpaid. (Code Civ. Proc., sec. 1963, subd. 20.)

■ The defendant at the time of trial offered to prove that the ultimate purpose of his transactions with the banks

was to impress upon those institutions the desirability of a checking system perfected by him. There was no error in the exclusion of this evidence. That the secondary purpose of a criminal act is lawful is not a matter of defense.

The record fails to disclose any error by the court in the matter of cross-examination of defendant's witnesses. There was no abuse of discretion by the court in that regard.

The judgment and order appealed from are affirmed.

HOUSER, J., Concurring.—I reluctantly concur in the judgment. My consent to the affirmance of the judgment has resulted solely from the compelling force of the precedents as established by the cases to which, in the opinion of my associate, attention has been directed. It is clear that the constitutional guaranty of ''due process of law'' is in great danger of being set at naught. With but slight extension of the rule, either as promulgated by the statute, or as judicially announced preceding its enactment, in any criminal prosecution in which the district attorney may find it difficult to produce evidence of the guilt of the defendant, he may invoke the doctrine of *''ab inconvenienti''* and thus shift to the defendant the entire burden of establishing his innocence. The formerly time-honored, but now not-greatly respected, rule of law which requires the prosecution to prove beyond a reasonable doubt every essential element of the crime of the commission of which the defendant is charged, would appear to have been given a construction which would seem to be wholly at variance with the plain language of the ordinary rule and completely out of harmony with ancient judicial precedents. It is but a short step backward to a former procedure which permitted prosecution on mere hearsay information, and on which, in the absence of the most positive affirmative proof of innocence, the accusation itself was sufficient to sustain a judgment of conviction. To my mind, the trend of judicial utterance is too much toward the abrogation of many of those constitutional principles which affect human rights and which were most dearly obtained. With the destruction of the doctrine of ''burden of proof on the prosecution'', no innocent man will be safe; but personal liberty will again become a prized, if not an uncommon, condition or attribute to the citizen of the republic.

CONREY, P. J., Dissenting.—I dissent. Assuming (although it is a doubtful assumption) that the ''presumptive evidence'' rule stated in section 476a of the Penal Code by its terms extends to the *fact* of insufficiency of funds or credit, I think that this legislative attempt to create such evidence by presumption is unconstitutional and void, because it permits the state to deprive a person of liberty without due process of law. It destroys the presumption of innocence, without any foundation of legal evidence tending to overcome the presumption of innocence. The notarial certificates, showing presentation, nonpayment, protest and notice of protest, do not furnish evidence of any facts justifying the bank's refusal to pay. They do say that the ''reason given'' was in two instances, ''no account''; in another, ''certification forged''; in another, ''no account, certification forgery''. And in two others, there is no statement at all of the reason given for refusing to pay. Perhaps it should be conceded that the return of the checks unpaid, and their production in evidence with the attached notarial certificates, may lawfully be used to raise the presumption that the checks were presented for payment and that payment was refused; and that, as to those facts, the provisions of section 476a are valid. (Code Civ. Proc., sec. 1875, subd. 7, and sec. 1963, subd. 15.) But the mere fact that a bank has refused to pay a check, is not in its nature different from the fact that any other person to whom a demand has been presented has refused to comply with the demand. He may, or he may not, owe the amount claimed. To prove that the defendant in this action did not have any funds or credit sufficient to meet his checks, it was necessary to produce evidence, legal evidence, tending to prove the fact. It is his right, that he shall have the opportunity to meet, confront and cross-examine any witness by whom it is sought to prove an essential fact of that kind.

In the instant case, there is no relation between the facts shown by the notarial certificates (with respect to the reasons given to justify refusal to pay the checks), and the further facts sought to be proved, such that on any reasonable theory the one can be inferred from the other. As applied to this question of fact, the so-called presumption is, I venture to say, an arbitrary deprivation of fundamental right.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1932.