[Crim. No. 3441.  Second Dist., Div. Two.  Aug. 7, 1941.]

THE  PEOPLE,  Respondent,  v.  ANDREW  DERENZO,
Appellant.

William Klein and William F. Herron for Appellant.

Earl Warren, Attorney General, and Lewis Drucker, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was charged in counts I and II of the information with the crimes of robbery and burglary. The information contained three other counts which were dismissed during the trial on motion of the district attorney. A jury returned verdicts of guilty on counts I and II and defendant has appealed from the judgments of conviction and from the order denying his motion for a new trial. It is now contended that the evidence is insufficient to justify the verdicts. From the evidence presented it ap-

pears that on April 27, 1940, defendant was the proprietor of the Patio café on Pico Boulevard in the city of Los Angeles. He became acquainted with Anthony Ardolino and Jack Magusin and told them that he had had some trouble with "his girl" and that if they would go to her house and ask her for the furs and jewelry that he had bought for her she would deliver them because she would be scared. Defendant telephoned and assured them that the "girl" was at home. Thereupon defendant drove in his Cadillac automobile to the residence of Mrs. Lloyd Knechtel, 1326 Londonderry Place in Los Angeles. Ardolino and Magusin followed in a Ford car owned by defendant. Upon arriving at Mrs. Knechtel's residence defendant pointed to the house and said, "Go on in." Ardolino and Magusin then entered Mrs. Knechtel's apartment on the ground floor "with guns," and by putting her in fear, robbed her of clothing, furs and jewelry of the value of several thousand dollars. After leaving Mrs. Knechtel's apartment Magusin got into the Cadillac car which was driven away by defendant, followed by the Ford car driven by Ardolino. They arrived at a private garage in Beverly Hills. Defendant unlocked the door of the garage with a key and placed the jewelry and furs in the garage.

An hour later defendant met Ardolino at the café and told him that they did not get all the furs. The next day defendant told Ardolino that he could get $100 for the jewelry and furs.

In the meantime defendant had contacted one Birrell, a real estate dealer with whom he had had business transactions for a number of years. He asked Birrell to do a favor for him and told him that he had a friend from San Francisco who was in straitened financial circumstances and wanted to sell his wife's jewelry but that he, the defendant, did not want to appear to buy the jewelry and make a profit on it. He suggested to Birrell that he could appear to be the purchaser of the jewelry and gave to Birrell $100 to use in the purchase. Later he presented Ardolino to Birrell and Birrell purchased from Ardolino a watch and two rings, which had been taken from the Knechtel apartment, for the sum of $90. A few minutes later defendant returned to Birrell's office and secured the jewelry and the $10 remaining of the original sum which he had given to Birrell. Sev-

eral days later defendant gave $40 each to Ardolino and Magusin, claiming that he had received a total of $140 for the jewelry and furs.

When questioned by police officers on July 16, 1940, defendant denied that he had sold stolen property, denied that he knew Ardolino and denied that he had sold any articles to Birrell. On the next day a police officer had a conversation with defendant in the presence of Birrell, at which time Birrell repeated the story of the transaction with regard to the jewelry, whereupon the police officer turned to defendant and defendant said, "Yes, it is a fact." Defendant later admitted to the officers that he had had the jewelry and that he had sold it to a man named Garvel. He also told the officers that he had parked his car "on the street," that Magusin had put the furs into the car, that he had driven to a rented garage and had placed the furs in the garage until Ardolino had left and had later hidden them in the trunk of a car in the garage; and that he had later sold them to a man named Jerry Golindo.

The jury could reasonably draw the conclusion that defendant conspired with Ardolino and Magusin to burglarize and rob Mrs. Knechtel. Defendant told the other two that Mrs. Knechtel would be scared, drove his automobile to the place of the crime, pointed out the house to be entered and directed them to enter it. He disposed of the property taken in the robbery after his co-conspirators had entered the house and taken it by force. ■ It was not necessary to prove the conspiracy by direct evidence but it could be established by circumstances from which its existence could be reasonably inferred. It was within the province of the jury to determine from all the evidence whether the crimes charged were the natural and probable consequences of the unlawful design of the conspirators. [1b] As a conspirator defendant was liable for all the natural and probable consequences incident to the commission of the act which he had advised. (People v. King, 30 Cal. App. (2d) 185 [85 Pac. (2d) 928].) The evidence is ample to support the verdicts.

■ In count V defendant was accused of the crime of receiving stolen property and it is now claimed that the dismissal of this count during the progress of the trial was tantamount to an acquittal and that the acquittal on count V is inconsistent with the convictions on counts I and II.

The charge contained in count V, receiving stolen property, is not necessarily included in the crimes of robbery and burglary. It is a separate and distinct offense composed of elements different from the elements which constitute robbery or burglary, and if it be assumed, without deciding, that the dismissal of count V was tantamount to an acquittal, it was not a bar to the conviction on counts I and II. (*People* v. *Bevans*, 19 Cal. App. (2d) 288 [65 Pac. (2d) 92].) Moreover, a complete answer to the contention is to be found in section 954 of the Penal Code which, as amended in 1927, provides that an information may charge two or more different offenses connected together in their commission and that a verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count. (*People* v. *Ranney*, 123 Cal. App. 403 [11 Pac. (2d) 405].)

Much of the evidence relied upon by the prosecution to sustain the convictions is to be found in the testimony of Ardolino, an admitted accomplice, and it is argued that there was not sufficient corroboration of Ardolino's testimony. The prosecution is not required to corroborate every statement made by an accomplice. Strong corroborative testimony is not necessary but the corroborative evidence, even though circumstantial and slight, is sufficient if it tends to connect the accused with the commission of the offense. The prosecution is not required to establish without the aid of the testimony of an accomplice that the defendant committed the offenses. The statements and admissions of defendant, made in connection with other testimony, may afford corroboratory proof sufficient to sustain a conviction. (*People* v. *Negra*, 208 Cal. 64 [280 Pac. 354].) Here we have corroboration of the testimony of the accomplice in the admissions made by defendant to the police officers concerning his participation in the crimes. Corroboration of the accomplice is to be found also in the testimony of the witness Birrell, who told of the faked purchase of property taken from Mrs. Knechtel.

The prosecution called as a witness a police officer who testified concerning a conversation with defendant in which the officer told defendant that Ardolino had made statements connecting defendant with the crime. The officer further testified that defendant had made prompt denial of his complicity in the crimes. The court erred in admitting

this testimony but the error does not call for a reversal of the judgment. As a general rule evidence of accusatory statements made to a defendant out of court are admissible only when the conduct of the defendant in relation thereto indicates his guilt, but if the conduct of the defendant fails to indicate his guilt the evidence should not be admitted. The objection to the admission of such evidence lies in the fact that hearsay evidence may improperly be presented to the jury. In the case before us, however, it appears that defendant was not prejudiced by the testimony of the officer in which the hearsay accusations of Ardolino were related, for the reason that Ardolino himself testified as a witness and his accusatory statements were presented to the jury under oath.

In its instructions the trial court read to the jury section 1096 of the Penal Code, on the subject of presumption of innocence, reasonable doubt and burden of proof. Defendant now complains that the court erred in also giving to the jury this instruction: "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it." Although the reading of section 1096 was sufficient to inform the jury on the subjects covered therein, the court was not restricted to the reading of the section but could in the exercise of its discretion amplify the definition of reasonable doubt. (*People* v. *Medalgi*, 94 Cal. App. 543 [271 Pac. 552].) The additional instruction correctly states the rule which has long been followed in this state. Defendant relies upon the decision in *People* v. *Soldavini*, 45 Cal. App. (2d) 460 [114 Pac. (2d) 415], but the reversal in that case was based upon the fact that the trial court failed to instruct the jury on the essential elements of the presumption of innocence and the burden of proof. These elements were covered in the instructions given in the case now before us.

In support of his motion for a new trial defendant presented the affidavit of the accomplice Magusin, who states that at the time of the making of the affidavit he was incarcerated in the state prison at San Quentin for the robbery of the apartment of Mrs. Knechtel on April 27, 1940. He

states that he was present at the robbery but that defendant did not participate therein and did not know of the participation in the crime by the affiant ''by any information or knowledge conveyed to him by your affiant.'' During the trial, when Ardolino related as a witness the participation of Magusin in the robbery, defendant asked for a continuance for the purpose of securing the presence of Magusin but the court denied the motion for a continuance. It is now contended that the court erred in refusing the continuance and in denying the motion for a new trial based upon the statements contained in the affidavit of Magusin. It is apparent that defendant did not exercise due diligence in the matter of securing the attendance of Magusin at the trial. It appears from the record that when the trial commenced Magusin had been sentenced to San Quentin for complicity in the crimes of which defendant was accused. Reasonable diligence on the part of defendant would have called for an interview with Magusin and the issuance of an order for his attendance if his testimony would be helpful to the defense. We find no error in the action of the trial court in denying the continuance or in denying the motion for a new trial.

The judgments and the order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1941.