[Crim. No. 4543. In Bank. Aug. 28, 1944.]

THE PEOPLE, Respondent, v. AARON SCOTT, Appellant.

Fred A. Shaeffer for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Lawrence M. Parma, District Attorney, and Thomas P. Weldon, Deputy District Attorney, for Respondent.

TRAYNOR, J.—In an information filed by the District Attorney of the County of Santa Barbara, defendant was accused of rape in Counts I, II, and III, on the basis of a single act of intercourse with a sixteen-year-old girl against her will. Count I charged statutory rape upon a female under the age of consent, in violation of subdivision 1 of section 261 of the Penal Code. Count II charged that the rape was accomplished by force and violence in violation of subdivision 3 of section 261. Count III charged that the rape was accomplished by threats of great bodily harm to the prosecutrix in violation of subdivision 4 of section 261. Count IV, based upon the same acts set out in Counts I, II, and III, charged defendant with contributing to the delinquency of a minor in violation of section 702 of the Welfare and Institutions Code. Count V charged the defendant with tampering with the identification marks on an automatic pistol in violation of section 13 of the Dangerous Weapons' Control Law of 1923, as amended (Stats. 1923, ch. 339; Deering's Gen. Laws, 1937, Act 1970, p. 999).

The defendant pleaded not guilty to each count. He was tried before a jury and convicted on all counts. Separate judgments were entered on each of the charges of rape in Counts I, II, and III sentencing defendant to the state prison for the term prescribed by law. The judgment on Count IV sentenced defendant to one day in the county jail, and the judgment on Count V sentenced him to the state prison for the term prescribed by law. All of the sentences were to run concurrently.

It is unnecessary to set forth in detail the testimony regarding the charges of rape. There can be no doubt of defendant's guilt as to Count I. He admitted the act of

intercourse and he admitted that complainant was not his wife. There was ample evidence that she was only sixteen years of age. As to Counts II and III the evidence establishes that the assault was accomplished by force and threats of great bodily harm to the complainant. The same evidence supports defendant's conviction on Count IV. The defendant, however, cannot be convicted on three separate counts of rape, all based on a single act of intercourse. Under section 261 of the Penal Code a single act of intercourse amounts to only one punishable offense of rape even though it be accomplished under more than one of the circumstances enumerated in that section. (*People* v. *Craig,* 17 Cal.2d 453 [110 P.2d 403].) ▆ The separate judgments on Counts I, II and III, must therefore be consolidated into a single judgment. (*Ibid.*)

▆ Defendant contends that the court's adverse rulings on his motions to dismiss Counts II, IV and V require a reversal. The motion to dismiss Count II was based on the ground that defendant had not been legally committed by a magistrate. (Pen. Code, § 995(1).) After reading the transcript of the preliminary examination, the court denied the motion. This transcript was not brought up on appeal, and error cannot be assumed in its absence.

▆ The motion to dismiss Count IV was based on the claim that the superior court, when not sitting as a juvenile court, is without jurisdiction to try a defendant accused of violating section 702 of the Welfare and Institutions Code unless the prosecution was initiated in the juvenile court and then transferred to the superior court sitting in the exercise of its general jurisdiction. The juvenile court has original jurisdiction over all misdemeanors defined in section 702 of the Welfare and Institutions Code (*In re Gamo,* 122 Cal.App. 725, 726 [10 P.2d 770]) and has jurisdiction to impose punishment in such cases when the defendant enters a plea of guilty. Jurisdiction rests with the superior court if the defendant, as in this case, enters a plea of not guilty. (*People* v. *Superior Court of San Bernardino County,* 104 Cal. App. 276 [285 P. 871]; *In re Gamo, supra.*) It was stipulated that each of the two departments of the Superior Court in the County of Santa Barbara has been designated as a juvenile court. Under defendant's plea of not guilty it would have been an idle act to transfer the case to the juvenile

court to be transferred back to the superior court. In any event, defendant cannot complain that this was not done, for on the hearing of defendant's motion, the court declared: "I am telling you specifically that if you wish it, we will convene on the fourth count as a juvenile court." That was not what the defendant wished, and the court denied the motion.

The evidence as to Count V shows that defendant had in his possession an automatic pistol, and that someone had tampered with the identification marks in violation of the statute. The court instructed the jury in the language of section 13 of the Dangerous Weapons' Control Law of 1923, which provides: "No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same."

Defendant contends that his motion to dismiss Count V should have been granted on the ground that the violation of the Dangerous Weapons' Control Law charged therein and the rape charged in the other counts of the information could not be tried together. Section 954 of the Penal Code provides that "An indictment, information, or complaint may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts" and that the court "in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately." The statute provided originally that an indictment could charge only one offense, but an amendment in 1905 authorized a joinder of different offenses if they related to the same act, transaction, or event (*People* v. *Plath*, 166 Cal. 227 [135 P. 954]; see 14 Cal.Jur. 64), and an amendment in 1915 permitted the joinder of offenses if they were "connected together in their commission." As it now reads the statute permits the joinder of different offenses, even though they do not relate to the same transaction or event, if there is a common element of substantial importance in their com-

mission, for the joinder prevents repetition of evidence and saves time and expense to the state as well as to the defendant. (*People* v. *Thorn,* 138 Cal.App. 714, 735 [33 P.2d 5]; see *People* v. *West,* 34 Cal.App.2d 55, 59 [93 P.2d 153]; *People* v. *Derenzo,* 46 Cal.App.2d 411, 415 [115 P.2d 858].) The possession of the firearm in the present case intimidated the complainant and was therefore an important element of the rape. It was also the basis of the offense charged under the Dangerous Weapons' Control Law. The possession of the weapon was thus a common and important element of each crime. Since the joinder did not result in embarrassment or prejudice to the defense (see *Pointer* v. *United States,* 151 U.S. 396, 403 [14 S.Ct. 410, 38 L.Ed. 208]; *Sheppard* v. *State,* 104 Neb. 709 [178 N.W. 616, 18 A.L.R. 1074]; 27 Am.Jur. Indictments and Information, § 130), it cannot be held that justice required separate trial or that the court abused its discretion in denying defendant's motion.

 Defendant challenges the constitutionality of the provision of section 13 that makes possession of a firearm whose marks of identification have been tampered with prima facie evidence that the tampering was done by the possessor. He contends that the rational connection between a fact proved and the fact presumed required by the due process clause of the 14th Amendment (*Tot* v. *United States,* 319 U.S. 463, 467 [63 S.Ct. 1241, 87 L.Ed. 1519]; *Morrison* v. *California,* 291 U.S. 82, 90 [54 S.Ct. 281, 78 L.Ed. 664]; *Western & Atlantic R. Co.* v. *Henderson,* 279 U.S. 639, 642 [49 S.Ct. 445, 73 L. Ed. 884]; *Manley* v. *Georgia,* 279 U.S. 1 [49 S.Ct. 215, 73 L.Ed. 575]; *Casey* v. *United States,* 276 U.S. 413, 418 [48 S.Ct. 373, 72 L.Ed. 632]; *Yee Hem* v. *United States,* 268 U.S. 178, 183 [45 S.Ct. 470, 69 L.Ed. 904]; *McFarland* v. *American Sugar Ref. Co.,* 241 U.S. 79, 86 [36 S.Ct. 498, 60 L.Ed. 899]; *Luria* v. *United States,* 231 U.S. 9, 25 [34 S.Ct. 10, 58 L.Ed. 101]; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 81 [31 S.Ct. 337, 55 L.Ed. 369]; *Bailey* v. *Alabama,* 219 U.S. 219, 238, 239 [31 S.Ct. 145, 55 L.Ed. 191]; *Mobile J. & K. C. R. Co.* v. *Turnipseed,* 219 U.S. 35, 43 [31 S.Ct. 136, 55 L.Ed. 78]) does not exist between the fact of possession and the presumption that the possessor committed the crime of tampering with the marks.

The rational connection required between a proved fact and a presumed fact must be distinguished from the relation

between a proved fact and an alleged fact that warrants a jury's inferring the one from the other (*Tot* v. *United States, supra,* at p. 468). An inference must be justified by the circumstances of the particular case. A statutory presumption, however, designed for general application in a given field and based on a pattern of experience in that field, is justified by the likelihood that the unpredictable circumstances of other cases will fall within the same pattern. The presumption may be invoked if the proved fact is "at least a warning signal according to the teachings of experience" (*Morrison* v. *California, supra,* at p. 90) of the fact presumed, and "the evidence held to be inculpatory has at least a sinister significance." (*Ibid.* p. 90.) The due process clause, however, forbids the introduction into the law of a fiction under the cloak of a presumption that would contradict the presumption of innocence and work a "wrong contrary to the real truth and substance of the thing" (*Hibberd* v. *Smith,* 67 Cal. 547, 561 [4 P. 473, 8 P. 46, 56 Am.St.Rep. 726]) by imposing on the accused a burden that "is not justified in the light of experience as to the circumstances of life as we know them" (*Tot* v. *United States, supra,* at p. 468). Thus, a presumption of an intent to defraud based on breach of contract of employment by an employee who has received an advance payment is a mere fiction and therefore unconstitutional. (*Bailey* v. *Alabama,* 219 U.S. 219 [31 S.Ct. 145, 55 L.Ed. 191]; see *Pollock* v. *Williams,* 322 U.S. 4 [64 S.Ct. 792, 88 L.Ed. ——].) It is likewise a fiction that the possession of a firearm by a person previously convicted of a crime of violence or by a fugitive from justice is prima facie evidence of shipping, transporting, or receiving in interstate commerce of such firearm by the accused after the date of enactment of the statute. (*Tot* v. *United States, supra.*) It may be a plausible supposition that the possessor of a firearm might use it for a crime of violence but there can be no "argument drawn from experience" (*Tot* v. *United States, supra,* at p. 468) to justify the presumption that such a firearm was acquired in interstate commerce. The presumption in the California statute differs from that declared unconstitutional in the Tot case. It applies to any possessor of a firearm with impaired marks of identification, whereas the presumption in the Tot case applied only to a certain group of possessors of firearms, whose members were no more likely to acquire

firearms in interstate commerce than others. Most important, the presumption in the California act that the possessor of a weapon whose marks of identification have been tampered with committed the crime of tampering with them is based on the condition that there be proof of tampering with the marks of identification on the firearm and is therefore concerned only with the identification of the person who committed the crime. The statute in the Tot case made possession of a firearm the basis of the presumption not only that the possessor was the person who committed the crime, but that the crime was committed even though there was nothing suspicious about the firearm to indicate that the crime had been committed. Presumptions like that in the California statute, based on the possession of a sinister thing, are traditional in criminal legislation, which frequently imposes on the possessor of contraband goods the burden of explaining that he did not acquire or use them unlawfully. Thus the possession of burglary tools by anyone except artisans and tradesmen at their places of business (*State* v. *Fitzpatrick*, 141 Wash. 638 [251 P. 875]), or the possession by junk-dealers of certain bottles with trade-marks or with trade-marks obliterated (*People* v. *Cannon*, 139 N.Y. 32 [34 N.E. 759, 36 Am.St.Rep. 668]), can be made prima facie evidence of their unlawful acquisition or of the intent of the possessor to use them unlawfully, just as the possession of articles, the sale of which is forbidden, may be made prima facie evidence of the keeping for sale of such articles. (*State* v. *Nossaman*, 107 Kan. 715 [193 P. 347, 20 A.L.R. 921]; *State* v. *Barrett*, 138 N.C. 630 [50 S.E. 506, 1 L.R.A.N.S. 626]; *Caffee* v. *State*, 11 Okla.Cr. 485 [148 P. 680]; see 33 Words and Phrases, Prima Facie Evidence, Criminal Law; 28 Columb.L.Rev. 489.) Possession of intoxicating liquor and narcotics particularly has served to impose on the possessor the burden of explaining the lawfulness of their acquisition and use. (*Casey* v. *United States, supra; Yee Hem* v. *United States, supra; United States* v. *Yee Fing*, 222 F. 154; *United States* v. *Ah Hung*, 243 F. 762; see 9 Wigmore, Evidence [1940] § 2513, pp. 423 and 424 and cases there cited; 31 A.L.R. 1222; 51 A.L.R. 1139; 86 A.L.R. 179.) In all such cases the possession of an article that has been or is likely to be made an instrument of crime raises a suspicion that justifies calling

on the accused for explanation. (*Casey* v. *United States, supra,* at p. 418; *People* v. *Fitzgerald,* 14 Cal.App.2d 180, 194, 195 [58 P.2d 718].) In the light of these cases the presumption in the present case is not "such a forced and unnatural one that the legislature may not enact that it shall be made." (*People* v. *Cannon,* 139 N.Y. 32, 46 [34 N.E. 759, 763, 36 Am.St.Rep. 668].)

The Dangerous Weapons Control Act is designed to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence. The identification of a person who has used a firearm criminally becomes more difficult and the attractiveness of a firearm for criminals is correspondingly increased, if its marks of identification have been tampered with. It would therefore be in the public interest to forbid the possession of firearms whose marks of identification have been tampered with. The mere threat of conviction to the possessor of such a firearm engendered by the presumption that he did the tampering is less severe than a statutory prescription of punishment for possession of such a firearm. The imposition of punishment for the possession of such a weapon is within the power of the Legislature to regulate the traffic in firearms. Legislation for regulatory purposes, which dispenses with the condition of awareness of wrongdoing and places the burden of acting at his peril on a person otherwise innocent "but standing in personal relation to a public danger" (*United States* v. *Dotterweich,* 320 U.S. 277, 281 [64 S.Ct. 134, 88 L.Ed. ——]; see *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U.S. 57, 69, 70 [30 S.Ct. 663, 54 L.Ed. 930] ; *United States* v. *Balint,* 258 U.S. 250, 252 [42 S.Ct. 301, 66 L.Ed. 604]) is a traditional means of regulation. The protection of the public interest in eliminating firearms whose marks of identification have been tampered with by a statute that resorts to the less severe means of regulation by using the "inherent coercive power of a presumption" (*Pollock* v. *Williams, supra,* 64 S.Ct. 792, 802) is likewise within the police power of the state. (See *In re Bear,* 216 Cal. 536, 540 [15 P.2d 489, 83 A.L.R. 1402] ; *Amos Bird Co.* v. *Thompson,* 274 F. 702, 705.) The tampering with marks of identification is ordinarily done in secrecy, and if the state could not require the possessor of the firearm to explain his possession, it would hardly be possible for the prosecution to determine who committed the

crime. There is nothing unreasonable in requiring the possessor to explain when and how he came into possession of a firearm whose marks of identification have been tampered with. The presumption does not impose on him the burden of proving who committed the crime, nor does it require him to persuade the jury of his innocence. He must merely go forward with evidence to the extent of raising a reasonable doubt that he tampered with the identification marks. When he has done so, he enjoys the benefit of the presumption of innocence, and it is then incumbent on the prosecution to establish his guilt beyond a reasonable doubt. (*People* v. *Fitzgerald, supra,* at p. 195; *People* v. *Agnew,* 16 Cal.2d 655, 665 [107 P.2d 601]; *People* v. *Post,* 208 Cal. 433, 437 [281 P. 618]; *People* v. *Bushton,* 80 Cal. 160, 164 [22 P. 127, 549].)

Defendant objects to the instruction with respect to the statutory presumption solely on the ground that the statute is unconstitutional. He does not contend that the instructions are otherwise erroneous or that the verdict would probably have been different had other instructions been given. Since the statute is constitutional, further inquiry as to possible error is unnecessary, for the court will not ordinarily consider questions that are not assigned as prejudicial error or presented in the briefs of counsel. (*People* v. *French,* 12 Cal.2d 720, 764 [87 P.2d 1014]; *People* v. *Wier,* 20 Cal.App. 2d 91, 94 [66 P.2d 703]; *People* v. *Cowan,* 44 Cal.App.2d 155, 158 [112 P.2d 62]; *People* v. *Britton,* 6 Cal.2d 10, 13 [56 P.2d 491].) Even if it be assumed, however, that the trial court's instruction should have been more specific in certain particulars, for example, that it should have instructed the jury that defendant was required only to raise a reasonable doubt that he did the tampering, it is improbable that the result would have been different. (*People* v. *Rogers,* 22 Cal.2d 787 [141 P.2d 722]; Cal. Const., art. VI, § 4½.) Defendant was admittedly inconsistent in explaining the source from which he obtained the firearm, and the explanation that he finally adhered to at the trial was clearly contradicted by other evidence.

The judgment as to Counts I, II and III is consolidated and modified to read "whereas the said Aaron Scott has been found guilty of the crime of rape, a felony, as defined and prescribed in sub-divisions 1, 3, and 4 of section 261 of the

Penal Code being separate statements of the same offense, it is therefore ordered, adjudged and decreed that the said Aaron Scott be punished by imprisonment in the state prison of the State of California at San Quentin for the term prescribed by law." As so modified the judgment and the order denying a new trial are affirmed. The judgment and the order denying a new trial as to Count IV are affirmed. The judgment and the order denying a new trial as to Count V are affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Schauer, J., concurred.

CARTER, J.—I dissent from that portion of the majority opinion which holds constitutional that portion of the provision of section 13 of the Dangerous Weapons' Control Act of 1923, which makes possession of a firearm whose marks of identification have been tampered with presumptive evidence that the tampering was done by the possessor. In my opinion this provision clearly violates the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States and is therefore invalid and void.

The majority opinion states: "The tampering with marks of identification is ordinarily done in secrecy, and if the state could not require the possessor of the firearm to explain his possession, it would hardly be possible for the prosecution to determine who committed the crime. There is nothing unreasonable in requiring the possessor to explain when and how he came into possession of a firearm whose marks of identification have been tampered with. The presumption does not impose on him the burden of proving who committed the crime, nor does it require him to persuade the jury of his innocence. He must merely go forward with evidence to the extent of raising a reasonable doubt that he tampered with the identification marks. When he has done so, he enjoys the benefit of the presumption of innocence, and it is then incumbent on the prosecution to establish his guilt beyond a reasonable doubt."

In my opinion the foregoing reasoning is unrealistic and unsound. To my mind it is perfectly obvious that the presumption of guilt provided for in said section 13 deprives the defendant of the presumption of innocence which is accorded every defendant under the Constitution and laws of this state, and to say that the presumption provided for in said

section "does not require him (the defendant) to persuade the jury of his innocence," is specious reasoning and wholly unrealistic. It is obvious that under this section and under the instruction given to the jury in the case at bar a defendant could be found guilty of a violation of this section regardless of the explanation he gives concerning the change of any marks of identification on a pistol or revolver in his possession. In other words, the statutory presumption would constitute sufficient evidence to support a verdict of guilty even though the defendant offered positive and convincing evidence that he had nothing to do with the making of such alteration. Furthermore, there is no sound basis in fact for the creation of such a presumption upon mere proof of possession of the weapon.

In the case of *Tot* v. *United States*, 319 U.S. 463 [63 S.Ct. 1241, 87 L.Ed. 1519], the defendant was convicted under the Federal Firearms Act (52 Stat. at L. 1250, 1251, 15 U.S.C. § 902f), which makes it unlawful for anyone who has been convicted of a crime of violence to receive any firearm or ammunition that has been transported in interstate commerce. It provides that "the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act." The government proved that Tot had been convicted of a crime of violence and that he was found in possession of a loaded automatic pistol. The defendant's motion for a directed verdict was denied and he was convicted. The conviction was reversed by the United States Supreme Court on the ground that the provision for the presumption was unconstitutional since there was "no rational connection between the fact proved and the ultimate fact presumed." With regard to the government's contention that the statute met the established tests of due process, the court declared: "But the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. . . . The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact

presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of the opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts. ... It is not too much to say that the presumptions created by the law are violent, and inconsistent with any argument drawn from experience.

''Nor can the fact that the defendant has the better means of information, standing alone, justify the creation of such a presumption. In every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution. It might, therefore, be argued that to place upon all defendants in criminal cases the burden of going forward with the evidence would be proper. But the argument proves too much. If it were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused should create a presumption of the existence of all the facts essential to guilt. This is not permissible.

''Whether the statute in question be treated as expressing the normal balance of probability, or as laying down a rule of comparative convenience in the production of evidence, it leaves the jury free to act on the presumption alone once the specified facts are proved, unless the defendant comes forward with opposing evidence. And this we think enough to vitiate the statutory provision.

''Doubtless the defendants in these cases knew better than anyone else whether they acquired the firearms or ammunition in interstate commerce. It would, therefore, be a convenience to the Government to rely upon the presumption and cast on the defendants the burden of coming forward with

evidence to rebut it. But, as we have shown, it is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation. The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship. . . ."

The Tot case compels a reversal of the judgment and order denying a new trial on Count V. The test of due process laid down therein is as applicable in determining the validity of state legislation under the Fourteenth Amendment as in determining the validity of federal legislation under the Fifth. There is a striking similarity between the provisions of the Federal Firearms Act invalidated in the Tot case and the provision of the California act in question here. Possession of a firearm is presumptive evidence under the federal act that the possessor received it in interstate commerce and under the state act, that any tampering with the identification marks was done by the possessor. It is just as arbitrary to infer from possession that the possessor tampered with the identification marks as that he received the firearm in interstate commerce. The necessity of punishing persons who tamper with the identification marks on firearms cannot justify convictions by unconstitutional devices designed to make proof of the elements of the offense unnecessary.

The various circumstances under which the Supreme Court of the United States has held presumptions invalid clearly establish that the presumption in the statute here involved cannot stand. All of those cases are cited with approval in *Tot* v. *United States, supra.* In *Bailey* v. *Alabama,* 219 U.S. 219 [31 S.Ct. 145, 55 L.Ed. 191], it was made a crime for an employee, with intent to commit fraud on his employer, to enter into a contract to perform services and obtain money thereunder and refuse to refund it or perform the services. From the failure to refund the money or perform the services a presumption of intent to defraud was declared to arise. *McFarland* v. *American Sugar Ref. Co.,* 241 U.S. 79 [36 S.Ct. 498, 60 L.Ed. 899], involved a statute making it a crime for engaging in a monopoly in the sugar refining busi-

ness. It was presumed that a monopoly existed if the person systematically paid a less price for sugar in Louisiana than he did in other states. The statute in *Manley* v. *Georgia,* 279 U.S. 1 [49 S.Ct. 215, 73 L.Ed. 575], denounced as a crime the fraudulent insolvency of a bank and declared the presumption that a bank which became insolvent was deemed to have become so fraudulently. *Western & Atlantic R. Co.* v. *Henderson,* 279 U.S. 639 [49 S.Ct. 445, 73 L.Ed. 884], dealt with a state statute which declared a presumption of negligence on the part of a railroad company when a collision occurred at a highway crossing between a train and a vehicle. *Morrison* v. *California,* 291 U.S. 82 [54 S.Ct. 281, 78 L.Ed. 664], involved the prohibition of the occupation of lands by aliens, and that the state need only prove that the defendant possessed the land and allege in the indictment or information that he was an alien or ineligible for naturalization. The defendant must prove his citizenship. The court said at page 90:

"Possession of agricultural land by one not shown to be ineligible for citizenship is an act that carries with it not even a hint of criminality. To prove such possession without more is to take hardly a step forward in support of an indictment. No such probability of wrongdoing grows out of the naked fact of use or occupation as to awaken a belief that the user or occupier is guilty if he fails to come forward with excuse or explanation. . . . Even so, the occasions that justify regulations of the one order have a kinship, if nothing more, to those that justify the others. For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance. . . .

"We turn to this statute and endeavor to assign it to its class. In the law of California there is no general prohibition of the use of agricultural lands by aliens, with special or limited provisos or exceptions. To the contrary, it is the privilege that is general, and only the prohibition that is limited and special. Without preliminary proof of race, occupation of the land is not even a suspicious circumstance."

This case was first appealed to the District Court of Appeal, Second Appellant District, Division 1, and decided by that court. The opinion rendered by that court was prepared by Honorable Thomas P. White and concurred in by Justice William Doran and Presiding Justice John York. I am in

full accord with the views expressed in said opinion and consider it a clear and correct statement of the law applicable to the legal proposition here involved and I adopt as a portion of this opinion the discussion contained therein relative to the validity of section 13 of the Dangerous Weapons' Control Act of 1923, which is as follows:

"Finally, appellant challenges the constitutionality of certain provisions of section 13 of the aforesaid Dangerous Weapons' Control Act of 1923, as amended, which formed the gravamen of Count V.

"Section 13 of the act reads as follows: 'No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. *Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same.*' (Italics added.)

"Pursuant to the aforesaid provisions the court instructed the jury that if they found from the evidence that the defendant was in possession of a firearm upon which the enumerated marks of identification were altered, removed or obliterated, such possession would constitute presumptive evidence that the defendant had so changed, altered, removed or obliterated such identifying marks.

"The constitutionality of that portion of the section which makes possession of a firearm upon which marks of identification have been tampered with, presumptive evidence that such possessor so changed or altered the identifying marks, is challenged by appellant upon the ground that being an essential element of the offense charged . . . a part of the corpus delicti . . . the fact that the defendant made the changes or alterations on the firearm must be proved by the prosecution, and that the burden of such proof cannot be shifted to the defendant by force of a legislative declaration that because of his possession of the firearm the defendant is presumptively guilty of the crime of making alterations or changes thereon.

"The vice of the challenged portion of the statute, as we view it, lies in the fact that it leaves the jury free to act upon the presumption alone, once the specified fact of possession is proved, unless the defendant comes forward with opposing

evidence. Under the American philosophy of jurisprudence and constitutional guaranties, is this not enough of itself to vitiate the statutory provision?

"It is here sought to sustain the validity of the questioned provisions of the statute upon the rule or principle of 'ab inconvenienti.' This principle, it is true, has been consistently followed in this state in cases involving prosecutions for practising medicine and other professions without a license; selling intoxicating liquors without being licensed so to do; illegal possession and transportation of intoxicating liquors, and in cases involving the question of citizenship or alienage. But in all these cases it is emphasized that the rule of convenience is applied only where the defendant has more convenient access to the proof, and where requiring him to go forward with such proof will not subject him to unfairness or hardship. In prosecutions for the doing of an act restricted to those who are licensed therefor, the rule of convenience is applicable because the accused, if licensed, can immediately show it without the least inconvenience (*People* v. *Boo Doo Hong*, 122 Cal. 606, 607 [55 P. 402]). Where a statute made it an offense knowingly to conceal smoking opium illegally imported and threw upon a defendant found in possession of such opium the burden of showing that he had not acquired it through illegal importation, the presumption was sustained on the ground that no lawful purchase of smoking opium could occur in this country, and therefore, the possession alone gave rise to sinister implications (*Yee Hem* v. *U. S.*, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904). Where an act of Congress placed upon an alien in deportation proceedings the burden of proving his residence and of excusing his failure to procure a certificate of residence from the Collector of Internal Revenue, it was held that in such a situation the shifting to the alien of the burden of explanation imposed no unreasonable hardship upon him (*Fong Yue Ting* v. *U. S.*, 149 U.S. 698, 13 S.Ct. 1016, 37 L.Ed. 905). But, as pointed out in *Tot* v. *U. S.* [319 U.S. 463], 63 S.Ct. 1241 [87 L.Ed. 1519], the fact that the defendant has the better means of information cannot, standing alone, justify the creation of such a presumption, for the defendant in every criminal case possesses at least an equal familiarity with the true facts, and in most cases, a greater familiarity with them than does the prosecution. Does that fact, however, justify the asser-

tion under our law, that all defendants in criminal cases should assume the burden of going forward with the evidence? If such an argument is sound and be carried to its logical conclusion, then why could not the Legislature validly command that the finding of an indictment, the holding of a defendant to answer by a committing magistrate, or even mere proof of the identity of the accused, should be presumptive evidence of the existence of all the facts essential to guilt?

"Undoubtedly the defendant in the instant case knew better than anyone else whether he himself altered the identification marks on the firearm in question. True, it would be a convenience for the prosecution to rely upon the presumption and cast upon the defendant the burden of producing evidence to rebut it. But the burden cannot thus be lawfully shifted when the fact of possession is not relevant to guilt of the offense of altering certain identifying marks upon the weapon. If the offense charged was possession of the pistol without a permit, the situation would be quite different and the presumption would be legal because neither inconvenience nor hardship would be worked upon the defendant in requiring him to produce such a permit, while to require the prosecution to negative such possession of a permit would require endless search of records, files and documents.

"Many people might acquire a firearm in good faith, and unacquainted with where marks of identification are placed upon the weapon, not even look for them. Yet such innocent possession, under the wording of section 13 of the act creates a presumption that such possessor is guilty of a felony and requires him to do what might be well nigh impossible . . . that is, produce evidence as to who did make the alterations.

"Respondent relies upon the case of *People* v. *Osaki*, 209 Cal. 169 [286 P. 1025], in which case proof of alienage of the defendants was in issue in connection with the Alien Land Law, forbidding ownership of land by Japanese aliens. In the cited case the court upheld the presumption of alienage under section 1983 of the Code of Civil Procedure. But, as in the medical and other license cases, no hardship was worked upon the defendants in requiring them to produce proof of their citizenship, for such fact was peculiarly within their knowledge, while to require the prosecution to prove

alienage would be well nigh impossible. We think it may fairly be stated that the principle of 'ab inconvenienti', which is an exception to the general rule applicable to criminal prosecutions, has, in this state, been confined to the particular line of cases where it becomes necessary, in order to constitute the offense charged, for the prosecution to prove the non-existence of a license required by law or of a certificate of citizenship. In such cases it is easy for the defendant to meet the burden thus placed upon him. However, the rule should not be applied in the enforcement of law so as to relieve the prosecution of the imperative duty to establish the truth of the charge made against the accused. Any relaxation of the general rule in that regard should be strictly confined to the principle of the rule of convenience. In the instant case it is at once apparent to us that the gravamen of the offense denounced by section 13 of the act is not the possession of a firearm, but the alteration, changing, removal or obliteration of certain identification marks thereon. Manifestly, if the proof of the prosecution under section 13 were to stop with a showing that the accused was in possession of the firearm, not even the corpus delicti of the charged offense would be proven. In addition thereto, the prosecution must prove that such possessor altered the identification marks on the weapon. Indeed, such proof is vital to establish the corpus delicti of the offense charged. In our opinion, under such circumstances, the corpus delicti can no more be established with the aid of a presumption of defendant's guilt because of his possession than it could be shown by the extrajudicial statements or admissions of the accused (*People* v. *Quarez,* 196 Cal. 404 [238 P. 363]). The rule of 'ab inconvenienti' is not, therefore, applicable herein.

''The rule of comparative convenience of producing evidence of the ultimate fact is, in our opinion, but a corollary to the main and controlling test of the validity of a presumption created by statute, viz., the essential requirement that there shall be some rational connection between the fact proved and the ultimate fact presumed (*Tot* v. *U. S.,* [319 U.S. 463] 63 S.Ct. 1241, 87 L.Ed. 1519]), and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate (*McFarland* v. *American Sugar Refining Co.,* 241 U.S. 79 [36 S.Ct. 498, 60 L.Ed. 899]). The essence of this requirement is tersely

illustrated in the language used in *Brightman* v. *U. S.*, 7 F. 2d 532, 534, involving a prosecution under the Harrison Anti-Narcotic Act, and wherein the court said: 'there is in our judgment no such rational connection between the fact of the possession of morphine in the Western District of Oklahoma and the fact of a purchase of it in that same district as to make the former prima facie evidence of the latter. Common experience does not support such a presumption.' So in the case with which we are here concerned, we are unable to perceive any reasonable connection or rational relationship between the fact proved, viz., possession of the weapon, and the ultimate fact to be presumed, i. e., alteration of identifying marks thereon. The relationship, if any, is strained, remote and not justified in the light of common experience. Section 13 of the statute herein shifts the burden of proof, and in a criminal case deprives the defendant of the protection of his constitutional guaranties. Running through all of the numerous authorities we have read on the subject, there is to be found a concession that such a statutory rule of evidence is a dangerous one, and should not be applied where it has no intrinsic evidential force, or where its application will impair some positive statutory or constitutional right. In the case of *In re Wong Hane,* 108 Cal. 680, 682 [41 P. 693, 49 Am.St.Rep. 138], the Supreme Court had before it an ordinance of the city of Los Angeles, the effect of which was to make proof of the mere possession of a lottery ticket a misdemeanor, and to place upon the defendant the burden of showing that his possession was lawful or innocent. In declaring the ordinance void as unconstitutional the court said: 'If there are any circumstances under which the possession of a lottery ticket may be lawful or innocent, a defendant who is charged with the offense of having such ticket in his possession is entitled to the presumption of innocence, and cannot be compelled to establish his innocence by affirmative proof. To the extent that the defendant is required to establish his innocence, the provisions of the ordinance violate his constitutional rights'. In citing with approval the case just mentioned, Mr. Justice Preston, in a well reasoned and carefully considered dissenting opinion in *People* v. *Troche,* 206 Cal. 35, 61 [273 P. 767], sets forth the broad and historic background of the doctrine of presumption of innocence in the following language: 'This is no time or place for a lengthy

dissertation upon this presumption, but it may be well remembered that its object is to protect the innocent and not to shield the guilty. It is a presumption of both law and fact. It was present in the Roman law and some authorities state that it marks back through Sparta and Athens to the Book of Deuteronomy. It was known to be a part of the common law as early as 1802. In 1817 Lord Gillies, in McKinley's Case (33 St.Tr., 275,506), in speaking of this presumption said, among other things: "It is a maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman; and I was happy to hear from Lord Hermand he is inclined to give full effect to it. To overturn this there must be legal evidence of guilt, carrying home a degree of conviction short only of absolute certainty." '

" 'Blackstone maintained (1753-1765) that: "the law holds that it is better that ten guilty persons escape than that one innocent suffer." (4 Bl. Com., chap. 27, margin page 358, *ad finem.*) '

" 'It is the strongest presumption known to the law. It is as much a part of our constitution, both state and national, as if it were written therein in letters of burnished gold. This fact has been assumed many times in this state and in one case at least expressly stated (*In re Wong Hane,* 108 Cal. 680 (49 Am.St.Rep. 138, 41 P. 693)). We presume that no one would contend that this presumption could be overthrown by any statutory enactment. Prima facie evidence or presumptions may be declared to exist where they flow logically from certain facts, but the presumption of innocence is ever present even in the deliberations of the jury and may alone and of itself sometimes avail to acquit the defendant.'

" 'This court should be quick and decisive in its action to declare anew our bill of rights and to preserve the essential attributes of a jury trial as known to the common law and as preserved by our constitution (art. I, secs. 7 and 13, Const.).'

"The claim that application of the presumption in the instant case resulted in doing justice to the particular defendant at the bar, does not justify its application, for while a departure from those long established, sound, legal principles and constitutional guaranties may result in justice for a particular defendant, it is dangerous to the community, and in the final analysis, serves only to pave the way for conviction of the innocent.

"Illegitimate and unconstitutional practices get their first footing by silent approaches and slight deviations from established legal modes of procedure. In a strong dissenting opinion delivered by Mr. Justice Sutherland of the Supreme Court of the United States in *Associated Press* v. *National Labor Relations Board*, 301 U.S. 103, 142, 57 S.Ct. 650, 81 L.Ed. 953, we are counselled to 'withstand all beginnings of encroachment. For the saddest epitaph which can be carved in memory of a vanished liberty is that it was lost because its possessors failed to stretch forth a saving hand while yet there was time.' The acquittal of a guilty person is truly a miscarriage of justice, but the conviction of an innocent person through relaxation of those fundamental legal principles such as the constitutional 'due process of law' provision, the presumption 'that a person is innocent of crime or wrong' (Code of Civ. Proc., § 1963, subd. 1), would be a tragedy. It is the duty of the courts to be watchful of the constitutional and inalienable individual rights of the citizens and to halt any stealthy encroachments thereon.

"We here quote the powerful and significant language of the late Mr. Presiding Justice Houser of this court in the case of *People* v. *Bullock*, 123 Cal.App. 299, 305 [11 P.2d 441], wherein he said: 'I reluctantly concur in the judgment. My consent to the affirmance of the judgment has resulted solely from the compelling force of the precedents as established by the cases to which, in the opinion of my associate, attention has been directed. It is clear that the constitutional guaranty of "due process of law" is in great danger of being set at naught. With but slight extension of the rule, either as promulgated by the statute, or as judicially announced preceding its enactment, in any criminal prosecution in which the district attorney may find it difficult to produce evidence of the guilt of the defendant, he may invoke the doctrine of "ab inconvenienti" and thus shift to the defendant the entire burden of establishing his innocence. The formerly time-honored, but not-greatly respected, rule of law which requires the prosecution to prove beyond a reasonable doubt every essential element of the crime of the commission of which the defendant is charged, would appear to have been given a construction which would seem to be wholly at variance with the plain language of the ordinary rule and completely out of harmony with ancient judicial precedents. It is but a short

step backward to a former procedure which permitted prosecution on mere hearsay information, and on which, in the absence of the most positive affirmative proof of innocence, the accusation itself was sufficient to sustain a judgment of conviction. To my mind, the trend of judicial utterance is too much toward the abrogation of many of those constitutional principles which affect human rights and which were most dearly obtained. With the destruction of the doctrine of ''burden of proof on the prosecution,'' no innocent man will be safe; but personal liberty will again become a prized, if not an uncommon, condition or attribute to the citizens of the republic.'

''We therefore conclude that the portion of section 13 of the aforesaid act which provides that 'possession of any such firearm upon which the same shall have been changed, altered, removed or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same' is unconstitutional and void; that therefore the giving to the jury of the instruction embodying such presumption constituted prejudicial error and invaded the substantial rights of the defendant.''

In my opinion the judgment of conviction against the defendant under Count 5 of the information should be reversed.