[Crim. No. 3361. Second Appellate District, Division Two.—November 22, 1940.]

THE PEOPLE, Respondent, v. CLARENCE PEARSON, Appellant.

Clarence Pearson, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and Lewis Drucker, Deputy Attorney-General, for Respondent.

WOOD, J.—In the information it is charged that defendant robbed Conrad C. Oferman on November 15, 1939; that he robbed Mary Walston on November 18, 1939; and that he robbed Alexander Afonin on December 8, 1939. In addition to the three charges of robbery the information contains a number of other counts making a total of thirteen. In the first four counts defendant is charged with the commission of several offenses connected in their commission with the main charge of robbery of Oferman, these offenses being kidnapping for the purpose of robbery, assault with a deadly weapon with intent to commit murder and the violation of section 503 of the Vehicle Code. In counts V to IX inclusive, in addition to the charge of robbery, defendant is accused of several crimes connected in their commission with the robbery of Mary Walston, these crimes being assault with a deadly weapon with intent to commit murder, assault with a deadly weapon and two charges of kidnapping. In counts X to XIII inclusive in addition to the charge of robbery, defendant is accused of several crimes connected in their commission with the robbery of Afonin, these crimes being kidnapping for the purpose of robbery, assault with a deadly weapon with intent to commit murder and the violation of section 503 of the Vehicle Code. It is also charged in the information that defendant had previously been convicted of felonies on three separate occasions and had served terms of imprisonment therefor in state prisons. Defendant admitted the charges of prior convictions. Defendant entered a plea of not guilty by reason of insanity but the jury by its verdict found that he was sane at the time of the commission of the offenses. At the trial count VI, in which the charge is assault with a deadly weapon with intent to commit murder, was dismissed on motion of the district attorney for lack of proof. Defendant was acquitted on counts I to IV inclusive, center-

ing around the alleged robbery of Oferman, and was convicted on all the other counts, except that on count XI he was convicted of attempted robbery. Defendant has appealed from the judgments of conviction and from the order denying his motion for a new trial.

The evidence of defendant's guilt appears to be overwhelming. Defendant entered a restaurant at 222 West 9th Street in the city of Los Angeles on November 18, 1939, at about 7:15 P. M. and with a "gun" forcibly took approximately $200 from the cashier, Mary Walston. She "had a good look at his face" and identified defendant at the trial as the man who robbed her. As the robber left the cashier screamed and Clifton M. Lemmon, who was seated in the restaurant, gave chase. The robber began to run and Lemmon followed him through an auto park. An attendant at the auto park identified defendant in the court room as the man who was chased through the auto park. Lemmon saw the robber go into a garage and reappear with a gun in his hand. Lemmon then called the police from a drug store at 10th Street and Grand Avenue and as he left the drug store he came face to face with the robber, who was walking by. The robber turned west on 10th Street and went to a service station at the corner of 10th and Hope Streets. At about this time Arthur Watts, accompanied by Jewel Lauritzen, was parking his car near the corner of 10th and Hope Streets, when a man, whom they identified as the defendant, pointed an automatic pistol at Mr. Watts and ordered him to "move over and get going". The robber forced Watts to drive the car to 7th and Soto Streets and during the drive told him that he had committed robbery.

The Afonin robbery occurred between 8 and 8:30 P. M. on December 8, 1939, at 8th and Soto Streets in Los Angeles. Afonin was traveling alone. He testified: "As I stopped, the defendant, Mr. Pearson, got in from the left hand side and stuck a gun in my left hand side and told me to pull over to the curb". Afonin drove a short distance to the curb, the robber being on the running board of his car. The robber demanded money but Afonin told him that he had none, whereupon the robber ordered him to move over to the right-hand side. Mr. Afonin testified: "I told him I wasn't moving over for him. I told him, 'If you want the car, you can take the car, but I am getting off right here." Notwithstanding the

weapon was still at Mr. Afonin's ribs he got out of the car and as the robber started to enter the car Afonin "took a swing at him", hitting him on the back of the head. At this instant "the gun went off". As Afonin started away the robber fired, the bullet striking Afonin on the side of the forehead.

Police officers arrived at the scene of the shooting shortly after and at 9 o'clock in the same evening they arrested defendant in a house about six or eight blocks from 8th and Soto Streets. They found him with a fresh bullet wound through the forearm. The officers found an automatic pistol in a blood-stained pillow slip on the top of the garage of the premises where defendant was arrested. A ballistic expert testified that the two empty cartridge shells found at the place where Afonin was shot had been fired from the pistol found on the premises where defendant was arrested.

Defendant contends that since he was found guilty of attempted robbery, an offense included within the crime of robbery of an automobile, the charge in count XI, he cannot be guilty of violating section 503 of the Vehicle Code, the charge contained in count XIII. When Afonin got out of the automobile it was standing by the curb. At that time he struck defendant and prevented the completion of the robbery. After Afonin departed defendant entered the automobile and drove it away. The jury could reasonably infer that two separate offenses were committed. The crime of violating section 503 of the Vehicle Code is not included in the crime of robbery or attempted robbery, the elements necessary to be proved being different in each offense. In any event, regardless of the conclusion to be reached on the point under consideration, it is apparent that defendant has not suffered prejudice for the reason that the sentence on count XIII was ordered to run concurrently with the sentence on count XI. It has been held that where the acts shown in evidence were so connected as to constitute one offense the fact that two sentences were pronounced for different offenses did not require a reversal where the sentences were made to run concurrently. (*People* v. *Anderson,* 75 Cal. App. 365, 371 [242 Pac. 906].)

Before the commencement of the trial defendant's counsel asked the court for a separate trial on each group of charges, the Oferman group, the Walston group, and the Afonin group.

The court denied the motion and the defendant now contends that it erred in so doing. Defendant was arraigned on February 5, 1940, and although informed of his constitutional rights, he elected to proceed without an attorney and entered pleas of not guilty. ▪ By failing to present a demurrer he waived the right to object to the inclusion of the various counts in one information. Section 1003 of the Penal Code provides that a defendant may demur to the information when it appears upon the face thereof ''that more than one offense is charged, except as provided in section 954'', and section 1012 provides that when the objections mentioned in section 1004 appear on the face of the information ''they can only be taken by demurrer . . . ''. By section 954 discretion is placed in the trial court to order separate trials for different charges or groups of charges.

▪ Even if defendant had not waived the ''objection'' by his failure to demur, the action of the trial court in denying the motion would not require a reversal of the judgments. It is provided in section 4½ of article VI of the Constitution of California that no judgment shall be set aside ''for any error as to any matter of pleading'' unless after an examination of the entire cause the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The court in any event could properly have placed defendant on trial on the three counts charging robbery and in presenting evidence on these three counts the prosecution could properly have offered all of the evidence which was in fact received by the court in substantiation of the charges upon which defendant was tried. All of the evidence was material to show that defendant was the party who actually committed the robberies. Defendant suffered no prejudice because of the fact that he was convicted of the charges other than robbery for the reason that in view of the three prior convictions the court was compelled to adjudge him an habitual criminal and to order that he be punished by imprisonment for life without being eligible for release on parole. (Sec. 644, Pen. Code.) Manifestly the ''error'' in the ''matter of pleading'' did not result in a miscarriage of justice.

▪ Upon defendant's request made on March 4, 1940, for the appointment of an attorney to represent him the court appointed the public defender. He now complains that the

public defender did not represent him properly. It appears from the record that the public defender represented the defendant during the presentation of the evidence upon eight of the counts of the information, that defendant was acquitted on four of these counts and that another count was dismissed. Defendant became dissatisfied with the services of the public defender and thereafter conducted his defense alone. The trial court, in response to a complaint made by the defendant during the trial, stated that the public defender had handled the case in a "creditable manner". The record before us substantiates the statement of the trial judge. Defendant had the right to discharge the attorney who had been appointed for him but he is not now in position to complain of any shortcomings in his defense which were thereby brought about. It is to be noted, however, that the record shows that defendant demonstrated marked ability in conducting his own defense, both in the trial court and in this court.

Defendant charges that the court erred on one occasion when at the afternoon recess the court admonished the jury: "You may retire, ladies and gentlemen, for the afternoon recess having in mind the usual admonition". Defendant asserts that this is a violation of the requirement of section 122 of the Penal Code that the jury must at each adjournment be admonished concerning their duty not to converse among themselves or to form or express any opinion until the cause be finally submitted to them. At the beginning of the trial the court at considerable length admonished the jury on the subject of this code provision and said to them in part: "The law provides that the court admonish the jury in substantially the manner I have just done, upon each recess occasion, so if you hear me repeat this from time to time, you will know that it is one of the things I have to do. At the same time I wouldn't want you to think that because I repeat it so often that it doesn't really mean anything. It may be that I will refer to it generally in our recesses during the morning or afternoon session, but it is a very necessary thing, as you can well imagine, because you are called upon to settle a serious matter, and you are not to form premature opinions or listen to casual remarks or read anything about it in the newspapers . . . ". No prejudice was shown here. It has been held that failure to give the

admonition does not require a reversal. (*People* v. *Coyne*, 116 Cal. 295 [48 Pac. 218].)

■ Defendant contends that the court committed error in receiving the testimony of a child of the age of nine years and argues that the questions and answers of the witness show that the child was not competent to testify. The determination of the question whether a child is of sufficient age and maturity to become a witness rests in the discretion of the trial judge. (*People* v. *Valenti*, 103 Cal. App. 249 [284 Pac. 485].) We find no indication of abuse of discretion on the part of the judge.

■ In giving its instructions the court told the jury that they should disregard statements of defendant which he had made in his argument and concerning which there was no evidence. In so doing the court stated that defendant had referred to an "exhibit" of a "gun" handed to him in the hospital and that the court did not have any recollection of any such evidence. From the record it appears that in answer to the question, "The first time you ever saw the gun that is in evidence was after you were arrested?" defendant answered, "In the hospital, yes sir". The court also instructed the jury that they were the sole and exclusive judges of the value and effect of the evidence and that it was their function to determine all questions of fact arising from the evidence. The court told the jury that any comment that the court might make would not be binding on the jury. In view of all the circumstances surrounding the commission of the crimes, and defendant's denial of his participation therein, it is difficult to see how he could have suffered prejudice by the court's error in failing to remember that defendant had testified that he first saw the weapon which had been introduced in evidence in the hospital. It is unreasonable to argue that any other verdict would have been returned by the jury if the error had not been made. Section 4½ of article VI of the Constitution of California is applicable to the situation.

■ When defendant entered the plea of not guilty by reason of insanity the court appointed three alienists to examine him pursuant to section 1027 of the Penal Code. One of these alienists was from the medical staff of a state hospital and it was stipulated that if the other two alienists should agree in their report an examination by the alienists from the state hospital would not be necessary. Defendant

now complains that he was prejudiced because of the fact that neither of the two alienists who reported that he was sane was a member of the staff of a state hospital. By his own stipulation defendant waived an examination and report by an alienist from the medical staff of a state hospital and is not now in position to complain of the failure of all three alienists to report on his mental condition.

Defendant contends that the court erred in refusing to give to the jury an instruction that in cases of circumstantial evidence the jury must not only be satisfied beyond a reasonable doubt that all the circumstances proved "are consistent with the defendant having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is the guilty person." Since the prosecution proved by eye witnesses that defendant committed the crimes of which he has been found guilty a reversal may not be demanded for failure of the court to give this instruction.

Other points presented by defendant are not of sufficient importance to justify a discussion herein. We are satisfied from an examination of the record that defendant was fairly tried and that there has not been a miscarriage of justice.

The judgments and the order are affirmed.

Moore, P. J., and McComb, J,. concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 19, 1940.