[Crim. No. 4788. In Bank. Nov. 14, 1947.]

In re CLARENCE M. PEARSON, on Habeas Corpus.

Clarence M. Pearson, in pro. per., for Petitioner.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

SCHAUER, J.—By application for the writ of habeas corpus petitioner attacks the validity of judgments of conviction of eight substantive offenses and the determination that he is an habitual criminal. We have concluded that the judgments of conviction of the substantive offenses are valid but that one of the three prior convictions recited therein is not competent to support a determination of habitual criminality. One of the substantive judgments is upon a verdict by which a jury found that petitioner was guilty of kidnapping for the purpose of robbery and had inflicted bodily harm upon his victim, and fixed punishment as imprisonment in the state prison for life without possibility of parole. (Pen. Code, § 209.) Since petitioner is legally confined under this judgment we have concluded, further, that the fact that he is an

habitual criminal previously twice, rather than three times, convicted of offenses enumerated in section 644 of the Penal Code cannot affect the term of his imprisonment.

I

█ Petitioner first contends that he was, in effect, deprived of the right to trial by jury[1] because he was tried at the same time on 13 assertedly unrelated felony counts, and that if section 954 of the Penal Code permits such joinder it is unconstitutional. That section provides that an indictment "may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts. . . . The prosecution is not required to elect between the different offenses or counts . . . but the defendant may be convicted of any number of the offenses charged . . .; provided, that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts . . . be tried separately. . . ." This court has rejected the contention that the section violates either the federal or the state Constitution by making possible the deprivation of the right to trial by jury as such right existed at common law. (*People* v. *Kelly* (1928), 203 Cal. 128, 133-135 [263 P. 226]; see *Ashe* v. *Valotta* (1926), 270 U.S. 424 [46 S.Ct. 333, 70 L.Ed. 662].)

The information upon which petitioner was brought to trial charged four offenses committed against one Oferman on November 15, 1939,[2] five offenses committed against four other victims on November 18, 1939,[3] and four offenses committed against one Afornin, a sixth victim, on December 8,

---

[1] It is not disputed by respondent, and we assume for the purpose of this proceeding, that the question of deprivation of this right, guaranteed by the state Constitution (art. I, § 7), can be raised by application for the writ of habeas corpus.

[2] Kidnaping for the purpose of committing robbery and that the victim was shot by petitioner; robbery; assault with a deadly weapon with intent to commit murder; violation of section 503 of the Vehicle Code. Petitioner was acquitted of these charges.

[3] Robbery; two charges of kidnaping; two charges of assault with a deadly weapon. One of these assault charges was dismissed. Petitioner was convicted of the remaining four offenses in this group. It appears from the opinion on appeal (*People* v. *Pearson* (1940), 41 Cal.App.2d 614, 617 [107 P.2d 463]) that such four offenses were committed at the same time and place.

1939,[4] all committed while petitioner was armed with a deadly weapon, a pistol. Petitioner's objections to such joinder, originally presented by motion for a separate trial on each group of charges, were rejected by the trial court and, on appeal, by the District Court of Appeal. (*People* v. *Pearson, supra,* pp. 618-619 of 41 Cal.App.2d.) His present objections (which, as appears from what already has been stated, are not precisely those that he made before the District Court of Appeal) must also be rejected. Even on appeal, it appears, they would not have been cause for reversal. ■ Joinder of distinct offenses is proper "if there is a common element of substantial importance in their commission." (*People* v. *Scott* (1944), 24 Cal.2d 774, 778 [151 P.2d 517].) The consolidation of a group of charges similar to those against petitioner was upheld in *People* v. *Duane* (1942), 21 Cal.2d 71, 74-77 [130 P.2d 123], where the "common element" was a plan to rob managers of Safeway Stores. In any event, the question of consolidation or severance is procedural and not, as petitioner contends, jurisdictional (*id.,* p. 78), and, as stated above, joinder does not deprive a defendant of the right to jury trial (*id.,* p. 77).

## II

The information alleged, petitioner admitted, and the trial court found, that petitioner had suffered three previous convictions of felony for each of which he had served a term of imprisonment in a state prison. Petitioner (relying upon such cases as *In re Seeley* (1946), 29 Cal.2d 294 [176 P.2d 24]; *In re McVickers* (1946), 29 Cal.2d 264 [176 P.2d 40]; *In re Harincar* (1946), 29 Cal.2d 403 [176 P.2d 58]; and *In re Wolfson* (1947), *ante,* p. 20 [180 P.2d 326]) contends that two of these prior convictions are not competent to support the trial court's determination that he is "an habitual criminal under section 644 Penal Code." The last-cited cases establish that "a petitioner may attack and secure relief in habeas corpus from an erroneous adjudication of habitual criminal status where the facts appearing, either from the face of the record or by satisfactory proof, show that as a matter of law the prior conviction is of a crime which does

---

[4]Kidnaping for the purpose of committing robbery and that the victim was shot by petitioner; robbery; assault with a deadly weapon with intent to commit murder; violation of section 503 of the Vehicle Code. Petitioner was convicted of the first and last mentioned offenses in this group and of lesser offenses included within the assault and robbery charges.

not meet the definition of an offense included in said section 644." (*In re Seeley, supra*, p. 299 of 29 Cal.2d.)

■ The first attacked prior conviction, according to the judgments of conviction of the substantive offenses, was of "larceny of auto, a felony," in Oregon in 1931. It appears from copies of the Oregon indictment and commitment[5] that the conviction was upon petitioner's plea of guilty to the charge that he did "feloniously take, steal and drive away" an automobile. In California the pertinent statutes provided that "Every person who shall feloniously steal, take . . . or drive away the personal property of another . . . is guilty of theft" (Pen. Code § 484 [Stats. 1927, p. 1046]) and that grand theft is committed "When the property taken is an automobile" (Pen. Code, § 487 [Stats. 1929, p. 365]). The Oregon offense, therefore, is substantially equivalent to the California offense of grand theft. Petitioner urges that here, as in *In re Connell* (1946), 68 Cal.App.2d 360 [156 P.2d 483], the foreign offense of which he was convicted was equivalent only to the California offense, not enumerated in section 644 of the Penal Code, which is denounced by section 503 of the Vehicle Code; i.e., the taking of a vehicle without the consent and in the absence of the owner "with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without intent to steal the same." The Connell case does not support petitioner's contention, for the foreign crime there considered was the offense (not substantially equivalent to grand theft in California) of "depriving" an owner of an automobile "by taking possession and driving away," an offense of which intent to steal was not an element.

■ The second attacked prior conviction, according to the judgments of conviction of the substantive offenses, was of "burglary, second degree, a felony," in the State of Washington in 1925.[6] Among the manners in which, under the Washington statute, such offense could be committed was by entry of the dwelling house of another "with intent

---

[5]The attorney general, on oral argument, conceded that such copies, which are attached to the petition as exhibits, are correct.

[6]It appears from a copy of the Washington judgment and commitment, attached to the petition as an exhibit and conceded by the attorney general to be correct, that the conviction was upon petitioner's plea of guilty to the charge of "Second Degree Burglary."

to commit some crime therein." (Rem. Comp. Stat., § 2579.) A certified copy of the Washington information shows that the burglary was alleged to have been committed in this manner. In California, to constitute the offense of burglary there must have been an entry with intent "to commit grand or petit larceny or any felony." (Pen. Code, § 459 [Stats. 1913, p. 228].) Therefore, the least adjudicated elements of the Washington offense are not equivalent to the elements of the similarly denominated California offense enumerated in section 644 of the Penal Code and the Washington conviction is not competent to support a determination of habitual criminality under that section. (*People* v. *Richardson* (1946), 74 Cal.App.2d 528, 540 [169 P.2d 44].)

### III

Section 644 provides that persons within its purview "shall" be adjudged habitual criminals but (par. (c)) "that in exceptional cases . . . the court may, in its discretion, provide that the defendant is not an habitual criminal." Petitioner contends that he has been denied the constitutional right to equal protection under the law because the trial courts of this state assertedly apply paragraph (c) of section 644 either "upon mere whim and caprice" or discriminatively against defendants who stand trial rather than plead guilty. To show that the statute was so administered petitioner presents certain evidence outside the record of conviction. (See *In re Bell* (1942), 19 Cal.2d 488, 501 [122 P.2d 22], and cases there cited, holding that such evidence will be received in a habeas corpus proceeding where it is material to the determination of whether the convicted petitioner has been deprived of a fundamental constitutional right; cf., *People* v. *Keilly* (1942), 54 Cal.App.2d 764, 768 [129 P.2d 939], holding that such evidence, in support of a contention substantially similar to petitioner's, may not be received on appeal.)

Petitioner presents copies of judgment rolls of nine other convicts sentenced by the judge who sentenced petitioner. Examination of these judgment rolls does not disclose, as petitioner contends, that such judge applied his power under subdivision (c) of section 644 capriciously or that he discriminated against defendants such as petitioner because they pleaded not guilty. Of the ten convicts whose judgment

rolls are before us only one, petitioner, was convicted of a primary offense constituting a crime of violence and only one, petitioner, was convicted of more than one primary offense. These facts, no doubt, were considered by the trial court when it determined petitioner's status. Furthermore, there is nothing to show that the determinations as to the habitual criminal status of these ten men[7] were representative of the determinations as to all defendants sentenced by this judge.

Petitioner also presents copies of certain charts prepared by a classification and parole officer as part of a report to the warden of Folsom State Prison, where petitioner is confined. Such charts were compiled after examination of the judgment rolls of the 2,676 convicted persons sentenced during the period from 1927 through 1944 who could have been determined to be habitual criminals. Of these persons, according to Chart 1, only 382 were "sentenced as habitual criminals"; the remainder were "not so sentenced." From this it does not appear whether such remainder were expressly found by the trial courts to be *not* habitual criminals. If there are not such express findings, and if there are findings that such remaining convicts suffered competent prior convictions or if such prior convictions were alleged and admitted, then those convicts are punishable as habitual criminals just as are the 382 convicts whose habitual criminal status was expressly found. (*In re Boatwright* (1932), 216 Cal. 677, 683, 684 [15 P.2d 755]; *People* v. *Vaile* (1935), 2 Cal.2d 441, 444 [42 P.2d 321]; see *In re Basuino* (1943), 22 Cal.2d 245 [138 P.2d 297].) Thus it does not appear from Chart 1 how many persons among those eligible are in fact being punished as habitual criminals. The same is true of Charts 3 and 5. Furthermore, although petitioner is one of the men whose cases are tabulated in Charts 1 and 3, Charts 2, 4 and 5 have nothing to do with the legality of his imprisonment. Therefore, petitioner has failed to show that section 644 has been capriciously administered or that he, either individually

---

[7]Of those who apparently could have been sentenced as habitual criminals, five who pleaded guilty and one who pleaded not guilty were found not to be habitual criminals; there was no express finding as to another who pleaded guilty. There was no finding as to two who, the judgment rolls disclose, could not properly have been found to be habitual criminals. Petitioner alone was expressly found to be an habitual criminal.

or as a member of the class of those who pleaded not guilty, has been discriminated against. As stated in respondent's brief, "All that the petitioner has shown in this case is that others whom he believes to have been more guilty than he have received less punishment. This does not show such inequality in the administration of the law as will justify a court in setting aside the judgment. (*Howard* v. *Fleming,* 191 U.S. 126 [24 S.Ct. 49, 48 L.Ed. 121].) The fact that persons convicted of crime may be subjected to different degrees of punishment for the same offense, in the exercise of a limited discretion, does not affect the validity of the law. (*In re Mulholland,* 97 Cal. 527 [32 P. 568].)"

IV

 Petitioner's status as an habitual criminal cannot affect the term of his imprisonment. Among the substantive offenses of which he was convicted was violation of section 209 of the Penal Code. Such section provides, as it did when petitioner committed the substantive offenses, that one who kidnaps another to commit robbery "upon conviction thereof shall suffer death or . . . imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person" kidnaped suffered bodily harm. Petitioner is legally imprisoned for life without possibility of parole under a judgment upon a jury verdict which so fixes his punishment.

For the reasons above stated the writ is discharged and petitioner is remanded to the custody of the warden of the state prison at Folsom.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

SPENCE, J.—I concur in the judgment for the reasons stated in the majority opinion under headings numbered I and IV. In view of the conclusions reached under those headings, I am of the opinion that the discussion in the majority opinion under headings numbered II and III is wholly unnecessary to the decision.

Edmonds, J., and Traynor, J., concurred.