[No. B071940. Second Dist., Div. Four. Oct 28, 1993.]

ERIC BELTON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Mari Morsel for Petitioner.

No appearance for Respondent.

Gil Garcetti, District Attorney, George M. Palmer and Otis L. Hubbard, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**EPSTEIN, Acting P. J.**—In this mandate petition, Eric Belton challenges the granting of the People's motion to consolidate two murder cases for trial. He argues that while the two offenses are of the same class, their joinder will result in substantial prejudice to him, thus rendering consolidation improper.

Petitioner's argument relies on case law which preceded the adoption of Proposition 115. The People argue that, with the adoption of Proposition 115, California abrogated prior limitations on consolidation of criminal cases and that joinder is now limited only by the federal Constitution and California statutory law.

We conclude that while the constitutional and statutory law adopted pursuant to Proposition 115 (Cal. Const., art. I, § 30; Pen. Code, § 954.1) limit the impact of the absence of cross-admissibility as a factor precluding joinder, other factors set forth in California case law remain relevant to the trial court's exercise of discretion as to whether it would be "in the interests of justice" to order separate trials. (Pen. Code, § 954.) Reviewing the facts of this case in light of these factors, we find no abuse of discretion in the granting of the People's motion to consolidate the two cases.

### FACTUAL AND PROCEDURAL SUMMARY

#### August 10, 1991, Incident

This incident was the shooting death of John Zachary Smith. According to the preliminary hearing testimony of Demetrice Harbin, on August 10, 1991, Smith (Pookie) was behind the wheel of a green car double-parked near her grandmother's house on East 56th Street. He was talking to Ms. Harbin's sister Ayana, Ayana's boyfriend Cedric, and to "Rokk." A gray car drove by three or four times, and the three young Black males in the car threw gang signs of three different sets of "Bloods." The gray car stopped just a few inches from the driver's side of Smith's car, and the three males started shooting at Smith. Smith died as a result of these gunshot wounds.

In a statement Ms. Harbin signed on the day of the shooting, she made no mention of seeing the rear passenger in the gray car, nor did she state that she had seen petitioner, or anyone who looked like him, in the gray car.

On December 4, 1991, in a tape-recorded statement to police (introduced into evidence at the preliminary hearing), Ms. Harbin identified petitioner as the rear passenger shooter and identified petitioner's photograph. A signed

statement by Ms. Harbin dated February 28, 1992, identified petitioner as the person who shot Smith.

At the preliminary hearing, Ms. Harbin testified that petitioner looked like somebody who was in the backseat of the gray car. She testified that she did not think that petitioner looks like the person who shot Smith. She said that she knows who shot Smith, that it was not petitioner, and that she is afraid to say who it is.

Detective John Garcia testified that he interviewed Rokk several months after the shooting. Rokk told him that Smith had not been well liked in the neighborhood, and had been selling drugs and "ripping people off" on drug deals. Even after Demetrice Harbin identified petitioner as the shooter, Detective Garcia did not ask Rokk any specific questions about petitioner because Rokk had already stated that he did not know who had done the shooting.

Detective Garcia determined that Smith had been a member of the "Bloodstone Villains." Petitioner is also a Bloodstone Villain.

Ayana Harbin, who had also been present at the shooting, testified that petitioner, whom she knew, was not in the gray car at the time of the shooting.

Ayana Harbin's boyfriend, Cedric, was shot the night after this incident. Since that time, he has been unable to carry on a normal conversation, he has memory problems, and he does not remember anything about Smith's shooting.

### August 13, 1991, Incident

This incident was the shooting death of Shawn Mitchell. Hashim Hasan testified at the preliminary hearing that on August 13, 1991, he was "hanging out" gambling at 1038 East 43d Street in Los Angeles with his friend Shawn Mitchell. About 3:55 p.m., a blue car drove up and shots were fired. The passenger was hanging out of the window, leaning over the car roof with his gun on the roof. Shawn Mitchell died of gunshot wounds from this shooting.

Hasan described the passenger as a dark-skinned male with pigtails. When Hasan talked with police on the day after the shooting, he selected petitioner's photograph. He told the officers, "It looks like him, but I'm not sure." Asked if he saw the shooter in court, Hasan pointed to petitioner as the person who looked like the shooter. He admitted that he was not sure that petitioner was that person.

Detective Wallace Tennelle testified that on August 16, 1991, he interviewed a person named Johnny Baker regarding Shawn Mitchell's shooting. Baker told him that the person responsible for the shooting was petitioner. He said he had heard petitioner talking about how he had shot at several "Crips." Baker later approached petitioner and told him that he had not killed a "Crab" (meaning Crip) because Shawn Mitchell was not a gang member. Baker selected petitioner's photograph from a lineup the officer showed him.

In an information filed on November 5, 1991, petitioner was charged with the murder of Shawn Mitchell. In an information filed on June 16, 1992, petitioner was charged with the murder of John Zachary Smith. On August 3, 1992, the People moved to consolidate the two cases. The trial court granted the motion, and petitioner challenges that order.

## DISCUSSION

The requirements for joinder of criminal charges are set forth in Penal Code section 954: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." That section also limits joinder, providing "that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

Petitioner acknowledges that the two murders which were the subject of the consolidation motion were crimes of the same class, and were joinable under the statute. His argument is that the court should have exercised its discretion to deny consolidation "in the interests of justice and for good cause shown" because of the prejudice which will result from joint trial of the two offenses.

In *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699], the California Supreme Court adopted a two-part test to determine whether the denial of a motion for severance was an abuse of discretion. Under *Williams*, the initial step was to determine whether the evidence pertinent to one case would have been admissible in the other under Evidence Code section 1101, subdivisions (a) and (b), "[s]ince cross-admissibility would ordinarily dispel any possibility of prejudice." (36 Cal.3d 448.) Even if evidence of each incident is not admissible in the

separate trial of the other, severance is not necessarily required. The court should then proceed to the second step: a balancing test weighing the probative value of considering one alleged offense in light of another, along with any additional factors favoring joinder, against the prejudicial effect of joinder. (*Id.* at p. 451.) For this part of the analysis, the court adopted the factors indicating prejudice set forth in *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129, 139-140 [172 Cal.Rptr. 86]: (1) lack of cross-admissibility; (2) joinder of highly inflammatory charges with another crime against an adult would have a seriously prejudicial effect upon a jury; (3) joinder of a weak case with a strong case would be prejudicial; and (4) the charge sought to be severed carried the death penalty. (*Ibid.*; *Williams*, *supra*, 36 Cal.3d at p. 452.)

*Williams* has been given a very narrow interpretation in later decisions. These cases have emphasized that ". . . cross-admissibility is not the sine qua non of joint trials." (*Frank* v. *Superior Court* (1989) 48 Cal.3d 632, 641 [257 Cal.Rptr. 550, 770 P.2d 1119]; *People* v. *Mason* (1991) 52 Cal.3d 909, 934 [277 Cal.Rptr. 166, 802 P.2d 950]; *People* v. *Ruiz* (1988) 44 Cal.3d 589, 606 [244 Cal.Rptr. 200, 749 P.2d 854].) They have required extreme disparity between weak and strong cases, or between inflammatory and noninflammatory offenses, in order to demonstrate the potential for prejudicial "spillover" from one case to the other, and have given only limited significance to the fact that a capital case is to be joined with a noncapital case. (See *People* v. *Mason*, *supra*, 52 Cal.3d at p. 934; *People* v. *Balderas* (1985) 41 Cal.3d 144, 173-176 [222 Cal.Rptr. 184, 711 P.2d 480].) These cases also have given increasing recognition to the benefits to the state of joinder, noting the conservation of judicial resources and public funds and the benefit to the public of reduced delay in the disposition of criminal charges. (*People* v. *Bean* (1988) 46 Cal.3d 919, 939-940 [251 Cal.Rptr. 467, 760 P.2d 996]; *People* v. *Mason*, *supra*, 52 Cal.3d at p. 935.)

In June 1990, California voters approved Proposition 115, which added section 30 to article I of the California Constitution. Subdivision (a) of that section provides: "This Constitution shall not be construed by the courts to prohibit the joining of criminal cases as prescribed by the Legislature or by the people through the initiative process." Penal Code section 954.1, also added by Proposition 115, requires that "[i]n cases in which two or more different offenses of the same class of crimes or offenses have been charged together in the same accusatory pleading, or where two or more accusatory pleadings charging offenses of the same class of crimes or offenses have been consolidated, evidence concerning one offense or offenses need not be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact."

██ The People argue that, through these enactments, the voters abrogated existing California case law limiting joinder. We do not agree.

California Constitution article I, section 30 expressly precludes the courts from applying the California Constitution as an independent basis for the prohibition of joinder. Penal Code section 954.1 prohibits the courts from refusing joinder strictly on the basis of lack of cross-admissibility of evidence. Neither of these limitations divests trial courts of their discretion under Penal Code section 954 to sever cases, otherwise properly joined, "in the interests of justice."

On appeal, the question has been whether the trial court abused its discretion in denying severance, an issue which requires evaluation of the potential prejudice from joinder. The joinder cases have focused on the statute, rather than on constitutional "independent state grounds," in deciding whether courts abused their discretion. To the extent that California jurisprudence on joinder of counts is based on statute or the federal Constitution, or on both, it is not affected by the joinder provisions of Proposition 115. It is only where an evaluation of joinder is based on the California Constitution, or rests solely on the lack of cross-admissibility of evidence, that it would be abrogated by Proposition 115.

In its discussion of prejudice from joinder, *Williams* twice refers to the effect of joinder on a criminal defendant's right to due process and a fair trial. First it notes that ". . . the joinder laws must never be used to deny a criminal defendant's fundamental right to due process and a fair trial." (*Williams, supra,* 36 Cal.3d at p. 448.) Later the court observes: "When substantial prejudice is clearly shown, a trial court's denial of a defendant's motion for severance constitutes an abuse of discretion under Penal Code section 954. Fundamental principles of due process compel such a conclusion." (36 Cal.3d at p. 452.)

These observations do not depend on an independent interpretation of the California Constitution; they are consistent with the opinion of the United States Supreme Court regarding the federal constitutional implications of misjoinder under comparable provisions of the Federal Rules of Criminal Procedure: "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." (*United States* v. *Lane* (1985) 474 U.S. 438, 446, fn. 8 [88 L.Ed.2d 814, 823-824, 106 S.Ct. 725].) Neither *Williams* nor the cases which followed it violate the limitation in Proposition 115 precluding judicial construction of the California Constitution "to prohibit the joining of

criminal cases as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (a).)

While Proposition 115 did not discard all prior case law regarding joinder, it did specifically limit the treatment of cross-admissibility of evidence as a primary factor for determining prejudice as set forth in *Williams*. Under Penal Code section 954.1, enacted as part of Proposition 115, evidence concerning one offense need not be admissible as to the other offense before the two offenses may be tried together. This limitation is a codification of several Supreme Court cases decided after *Williams* that hold that while cross-admissibility may be considered as a factor suggesting possible prejudice, the absence of cross-admissibility does not, by itself, suffice to demonstrate prejudice. (*People* v. *Mason, supra,* 52 Cal.3d at p. 934; *Frank* v. *Superior Court, supra,* 48 Cal.3d at p. 641; *People* v. *Bean, supra,* 46 Cal.3d at p. 939.) Proposition 115 also precludes any possible future judicial construction (unless compelled by the federal Constitution) to the effect that cross-admissibility of evidence is a requisite of joinder (or the denial of a motion for severance.)

■ We now turn to an examination of the showing of potential prejudice made by petitioner in this case.

The parties agree that evidence as to one case would not be admissible in a trial of the other. But, as we have seen, the absence of cross-admissibility does not preclude joinder. (Pen. Code, § 954.1; *People* v. *Mason, supra,* 52 Cal.3d at p. 934.)

Petitioner also claims that the joinder of a very weak case with a slightly stronger case might cause the jury to view the evidence cumulatively as one strong case. From the evidence before the court at the time of its ruling, the cases appear to be of relatively equal strength. Demetrice Harbin, eyewitness to the murder of John Zachary Smith, in both a tape-recorded statement and in a signed written statement, identified petitioner as Smith's shooter. She also made a photo identification of petitioner.

As to the murder of Shawn Mitchell, eyewitness Hashim Hasan selected petitioner's photograph as the person who looked like the shooter; he also identified petitioner in court as the person who looked like the shooter, although he admitted that he was not sure. The investigating officer in that case obtained information from an individual named Johnny Baker who stated that petitioner was responsible for Mitchell's murder; Baker told the officer that he had heard petitioner talking about having shot at several Crips.

Neither case was particularly weak in evidentiary support when compared with the other, so as to create a risk of "spillover" from one to the other. (See *People* v. *Sully* (1991) 53 Cal.3d 1195, 1223 [283 Cal.Rptr. 144, 812 P.2d 163].)

Petitioner claims he would be prejudiced by the inflammatory nature of gang evidence, in that he would attempt to introduce gang evidence in the Smith case, since he and Smith were in the same gang, but would seek to exclude it in the Mitchell case, where gang rivalry is a possible motive. While we are skeptical of petitioner's hopes of excluding gang evidence in the Mitchell case, given its relevance to motive, that is a decision left to the sound discretion of the trial court, to be exercised either before or during trial. (See *People* v. *Sandoval* (1992) 4 Cal.4th 155, 175 [14 Cal.Rptr.2d 342, 841 P.2d 862], cert. granted on unrelated issue.) No prejudice is shown at this stage.

Also insufficient to demonstrate prejudice is petitioner's assertion that he "will more than likely want to testify" in the Smith case, but not in the Mitchell case. Our Supreme Court recently adopted the view of the federal courts that the need for severance based on a defendant's desire to testify in only one of two joined cases does not arise " ' "until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." ' [Citations.] Federal courts have required the defendant to present enough information to satisfy the court that the claim of prejudice is genuine and to enable it to weigh the considerations of economy and expedient judicial administration against the defendant's interest in having a free choice with respect to testifying. [Citation.]" (*People* v. *Sandoval, supra,* 4 Cal.4th at p. 174; see also *People* v. *Boyde* (1988) 46 Cal.3d 212, 232-233 [250 Cal.Rptr. 83, 758 P.2d 25] [antagonistic defenses do not compel severance]; *Zafiro* v. *United States* (1993) __ U.S. __ [122 L.Ed.2d 317, 113 S.Ct. 933] [same].) Petitioner has made no such showing.

We observe that neither case is more likely to be inflammatory than the other. Both were drive-by shootings with gang implications. The Smith murder may have been motivated by dissatisfaction with Smith's handling of drug sales; the Mitchell murder appeared to involve gang rivalry. Their inflammatory potential seems about even.

Petitioner's final argument is that joinder of the two cases creates a special circumstance case. But even if the cases were tried separately, conviction on the first case would make the second a special circumstance case under Penal Code section 190.2, subdivision (a)(2). (*People* v. *Mason, supra,* 52 Cal.3d at p. 934.)

Petitioner has not demonstrated that the potential for substantial prejudice outweighs the well-recognized benefits to the state from joinder of cases. (See *People* v. *Bean*, *supra*, 46 Cal.3d at pp. 939-940.) We find no abuse of discretion in the order granting the People's motion for consolidation.

DISPOSITION

The petition for writ of mandate is denied.

Vogel (C. S.), J., and Conway, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.