Filed 7/24/13  P. v. Ward CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B239031 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA076857) |
| v. | |
| JOHNNY WARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed as modified.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Johnny Ward appeals from a judgment of conviction entered after a jury trial and a subsequent plea agreement. The People charged Ward by information with six counts: the February 28, 2011 first degree burglary of a residence belonging to Polly Morgan (Pen. Code, § 459; count 1); the February 28, 2011 first degree burglary of a residence belonging to Charlotte Lusk (*ibid*.; count 2); the February 26, 2011 first degree burglary of a residence belonging to Masa Shopp (*ibid*.; count 3); the February 26, 2011 first degree burglary of a residence belonging to Lindsay Larson (*ibid*.; count 4); the February 21, 2011 attempted first degree burglary of a residence belonging to Cassandra Helton (*id*., §§ 459, 664; count 5); and the February 21, 2011 first degree burglary of a residence belonging to Meghan Murphy (*id*., § 459; count 6). The information alleged that Ward had four prior felony convictions, which made him ineligible for probation (*id*., § 1203, subd. (e)(4)), and that one of those convictions was a serious felony, which constituted a strike under the "Three Strikes" law (*id*., §§ 667, subds. (a)(1), (b)-(i), 1170.12).

The jury convicted Ward on counts 3 and 4 only. The jury was unable to reach verdicts on the remaining counts, and the trial court declared a mistrial as to those counts. At a sentencing hearing, and at the suggestion of the trial court, Ward entered into a plea agreement whereby he pleaded no contest to counts 5 and 6 in exchange for dismissal of the serious felony allegations. The trial court sentenced Ward to nine years and four months in state prison, consisting of the upper term of six years on count 3, and one-third the middle term on counts 4, 5, and 6, to be served consecutively.

On appeal Ward argues that the trial court violated his due process rights to a fair trial by joining the counts against him without imposing adequate procedural safeguards and giving a limiting instruction regarding cross-admissibility of evidence. He also asks us to order the trial court to correct the abstract of judgment to reflect accurately his presentence custody credits. We reject his challenges to the judgment of conviction. We

2

modify the judgment to impose the correct parole revocation fine and order the trial court to correct the abstract of judgment.

**FACTS**

A.    *Count 1*

On the evening of February 28, 2011 Fiafia Teofilo, who lived on Paloma Avenue in Venice, heard his neighbor, Polly Morgan, scream, "Help.  I need help."  Teofilo ran out of his house to where the screaming was coming from, and he saw Morgan fighting with a man at her front door on the porch.  Morgan was saying "Get away from me.  Get away from me."  Teofilo struggled with the man, punched him, knocked him down, and grabbed his legs while other neighbors called the police.  Another neighbor, Bahar Kaffaga, was eating dinner when he heard "a woman's scream," ran outside, and saw the struggle on Morgan's porch.  The man, whom Kaffaga identified at trial as Ward, managed to escape and "hopped over the fence," but the neighbors gave chase.  They wrestled Ward to the ground, but Ward was strong enough to escape again.  Teofilo went back to comfort Morgan.

Kaffaga and other neighbors continued to look for Ward.  They lost sight of him briefly but split up into groups and found him again.  Ward looked like the man Kaffaga had been pursuing, although Ward was not wearing the sweater he had been wearing.  As they approached him, Ward said, "I don't want no more trouble from you guys."  When Ward walked away again, Kaffaga "grabbed him by the shoulders and shoved him into a hedge, sat him down to the ground, and in ten seconds the police car circled around and saw us and stopped."

Morgan told the police that someone had stolen items from her house.  She thought Ward was the man who had done so, but she was not sure.  Teofilo could not make an identification.

3

B.    *Count 2*

Early in the morning on February 28, 2011 Charlotte Lusk was asleep in her apartment in Windward Court in Venice when she was awakened by the sound of her neighbor's Rottweiler "barking uncontrollably." She heard the sounds of someone climbing over the metal door leading to the back patio. She grabbed "a big steak knife" she kept by her bed and went downstairs to investigate. She saw a "hippie"-looking man with shaggy, curly, "sandy beachy blond" hair "walking through the kitchen and just kind of assessing out the house kind of thing." He was about five feet, nine and one-half inches tall, and weighed 160 to 170 pounds. He looked "sedated or high." She screamed at him to get out of her house and displayed the knife. He told her to calm down and "chill," and that he was just drunk. He slowly backed up, opened the back door, and calmly walked into the alley.

Lusk identified Ward from a photographic lineup a few days later. She recognized Ward as soon as she saw his picture in the photographic lineup and was "like 100 percent" certain. At trial, however, she was unable to identify him.

C.    *Count 3*

Masa Shopp lived in a house on Superba Avenue in Venice. On the afternoon of February 26, 2011 she was home with her 22-month-old son, who was sleeping, when she heard noises coming from the rear of the property, where there was a guest house. When she went into her kitchen to investigate, she saw Ward walking out the kitchen door into the backyard. He was clutching her purse, a black Gucci tote bag, which held her wallet, her son's toy or book, and a pouch of personal hygiene products. She yelled at him to stop, but he continued walking and jumped over a wall into the neighbor's yard. Shopp called the police. She later identified Ward from a photographic lineup as "clearly the guy who took my purse" and also identified him in court.

4

D.    *Count 4*

On the morning of February 26, 2011 Lindsay Larson and her sister left Lindsay's apartment on Venice Way to take a walk. When they returned and Larson attempted to enter the hallway, "there was someone standing there stopping the door from opening." After some "pushing and pulling of the door handle" Larson was able to see the "entire face" of the person on the other side of the door. She asked him who he was and what he was doing in her house. Ward "said something about just being tired and needed a place to rest or sleep, or something like that." Larson then let Ward close the door, called the police, and went with her sister to a neighbor's apartment.

When the police arrived, Ward was gone. Larson went through her apartment, and it appeared to her that her room had been searched. Her 26-inch flat screen television set was missing, and the screen had been bent and removed from the bathroom window. There was a footprint on the toilet seat in her bathroom directly under the window and a plastic bag in the bedroom that did not belong to her. The police found documents in the plastic bag that had Ward's name and signature on them. Larson later identified Ward from a photographic lineup and identified him in court.

E.    *Count 5*

Robert Sunderland lived on the second floor of a duplex on Vista Place in Venice. When he arrived home at about 9:00 p.m. on February 21, 2011 after taking his dog for a walk, he saw Ward at the door of his downstairs neighbor, Cassandra Helton. Ward was holding a crowbar and moving it back and forth. Sunderland asked what he was doing there. Ward said that his girlfriend lived there. When Sunderland challenged him, Ward "started backing up real slowly . . . and then he just ran down the alley." Sunderland called 911 and reported that he had witnessed someone trying to break into his neighbor's apartment. Two weeks later, Sunderland identified Ward from a photographic lineup. Sunderland recognized him by eyes, hair, and facial features. He also identified Ward at trial.

F.      *Count 6*

At about 10:45 p.m. on February 21, 2011, Meghan Murphy returned to her home in Venice Beach after buying some noodle soup at a liquor store four buildings down the street. She unlocked her door, went inside, and walked past her bedroom and into the kitchen. Then she saw a man with "long shaggy brown hair" and a "scruffy face," wearing jeans and a T-shirt, walking out of her bedroom and towards the door. When she asked who he was, he said, "Don't worry about it" and walked out the front door. She then realized that the man had her laptop, so she shouted to him, "You have my computer," and he ran off towards the Venice canals. The police arrived ten minutes later, and Murphy determined that the man broke in through a window over the kitchen sink that had been painted shut. Murphy "picked [Ward] out right away" in a photographic lineup, recognizing him "from his hair and eyes" and build. Murphy also identified Ward in court.

## DISCUSSION

A.      *Joinder Without Limiting Instruction*

Ward contends that "[w]hen transactionally unrelated counts are joined for a single trial under the provisions of Penal Code sections 954 and 954.1, due process considerations require that the court give a limiting instruction that the jurors may not consider the facts of the multiple counts as evidence that the defendant is a person of bad character or has a propensity to commit crimes." As discussed below, the Penal Code provides procedural protections to prevent prejudice resulting from the joinder of transactionally unrelated counts. Ward, however, did not ask the trial court for such protections, and the trial court had no duty to give a limiting instruction sua sponte. Ward's failure to request a limiting instruction forfeited on appeal his contention that the trial court erred in failing to give the instruction. In any event, we conclude that the failure to give the instruction was not prejudicial.

Penal Code section 954 provides in pertinent part: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts, . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. . . ."[1] When the charged offenses satisfy the requirements for joinder, a defendant may seek severance on the ground there is a substantial danger of prejudice if the trial court tries the charges together. (*People v. Thomas* (2011) 52 Cal.4th 336, 349; *People v. Bradford* (1997) 15 Cal.4th 1229, 1315; *People v. Memro* (1995) 11 Cal.4th 786, 849.)

Ward points to nothing in the record indicating that he filed a motion for severance. Therefore, he has forfeited any claim of error with respect to joinder. (*People v. Ramirez* (2006) 39 Cal.4th 398, 438; *People v. Marlow* (2004) 34 Cal.4th 131, 143; *People v. Maury* (2003) 30 Cal.4th 342, 392.) Moreover, because Ward was charged with the same offense in all six counts (although one was an attempt), joinder was presumptively appropriate. (*People v. Thomas*, *supra*, 52 Cal.4th at pp. 349-350.)

Ward seems to be suggesting that Penal Code section 954 is unconstitutional because it allows the jury to hear evidence regarding the defendant's conduct in other charged crimes without the same procedural safeguards available when the prosecution seeks to admit evidence of other uncharged crimes under Evidence Code section 1101, subdivision (b). California courts, however, have repeatedly upheld the constitutionality of Penal Code section 954. (See, e.g., *In re Pearson* (1947) 30 Cal.2d 871, 873-874; *People v. Mills* (1958) 162 Cal.App.2d 840, 859; *People v. Grossman* (1938) 28 Cal.App.2d 193, 203.) To the extent the evidence of a defendant's uncharged acts is so prejudicial that no limiting instruction could cure the harm caused by its admission, the defendant may protect his right to a fair trial by moving for severance under the statute,

---

[1] Penal Code section 954.1 addresses the cross-admissibility of evidence when different offenses are joined together.

7

which Ward did not do.  (See *People v. McKinnon* (2011) 52 Cal.4th 610, 630 ["'Denial of a severance motion may be an abuse of discretion if the evidence related to the joined counts is not cross-admissible; if evidence relevant to some but not all of the counts is highly inflammatory; [or] if a relatively weak case has been joined with a strong case so as to suggest a possible "spillover" effect that might affect the outcome'"]; *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1285 ["'When substantial prejudice is clearly shown, a trial court's denial of a defendant's motion for severance constitutes an abuse of discretion under Penal Code section 954" because "[f]undamental principles of due process compel such a conclusion.'  [Citation.]"]; see also *People v. Thomas* (2012) 53 Cal.4th 771, 799-801.)

Ward also points out that when the prosecution seeks to admit other crimes evidence, the prosecution has the burden of establishing that the probative value of the evidence outweighs its prejudicial effect.  (*People v. Soper* (2009) 45 Cal.4th 759, 773; see Evid. Code, § 352.)  By contrast, when cases are joined under Penal Code section 954, the defendant bears a "high burden" of establishing that joinder would be prejudicial.  (*Soper*, *supra*, at p. 783.)  Ward, however, cites no authority for the proposition that imposing this burden on a defendant is unconstitutional.

Ward's reliance on the California Supreme Court's decision in *People v. Villatoro* (2012) 54 Cal.4th 1152 is misplaced.  *Villatoro* discusses the concerns that arise when evidence of uncharged sexual conduct is admitted pursuant to Evidence Code section 1108.  *Villatoro* does not address the question of joinder or the constitutionality of Penal Code section 954.  Moreover, the court in *Villatoro* ultimately concluded that the evidence admitted under Evidence Code section 1108 "was highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice."  (*Villatoro*, *supra*, at p. 1169.)

In any event, the joinder was not prejudicial.  The "jury reviewed the evidence dispassionately" and convicted Ward on only two of the six charges against him.  (*People v. Smith* (2003) 30 Cal.4th 581, 617.)

8

B.    *Jury Instruction*

During deliberations, the jury asked the following question:  "When we are deciding on 1 of the 6 cases, are we allowed to use any evidence from the other 5 cases to determine if the defendant is guilty or innocent?"  The trial court indicated it intended to answer the question "yes," but it wanted to hear from counsel first.  Defense counsel asked, "And no clarification other than that?"  The court responded, "If you would like me to clarify something, this is your opportunity to make that record now."  Defense counsel stated, "Well, I would only point out that—that the—that one answer could be the evidence has been submitted to you on all six counts, and that, you know, it's your job to review the evidence on all six counts, and then leave it at that."

The prosecutor stated, "I think the one word answer, 'yes,' is simple.  It's clean.  It's not confusing.  And arguments both for the People and the defense—there are arguments about M.O. or modus operandi, and the differences and distinctions and similarities between the crimes, the way they were committed, things of this nature.  So obviously, I think that they can all be considered in reviewing the charges and facts and the evidence.  And I just think the one-word answer "yes" is just simple, clean."

The trial court suggested, "What I can do is reread the instruction that indicates that each offense is a separate offense and they must return a verdict on each count.  Each count is a separate count."  Defense counsel responded, "I would appreciate that."

The jury returned to the courtroom.  The trial court answered the jury's question, "yes," and reread CALCRIM No. 3515:  "Each of the counts charged in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."

Ward now contends that the trial court should have given the jury a limiting instruction on the use of potentially cross-admissible evidence.  The trial court has no duty to provide sua sponte a limiting instruction regarding cross-admissible evidence.  (*People v. Maury*, *supra*, 30 Cal.4th at p. 394.)  Defense counsel's acquiescence in the instruction that the trial court gave and counsel's failure to propose a limiting instruction forfeits Ward's claim of error on appeal.  (*Id*. at p. 398, fn. 11; see Evid. Code, § 355

9

[trial court shall give limiting instruction "upon request"]; *People v. Valdez* (2012) 55 Cal.4th 82, 149 ["a defendant who fails to ask the trial court to give a limiting instruction may not raise the issue on appeal"]; *People v. Clark* (2011) 52 Cal.4th 856, 942 ["Because defendant failed to request a limiting instruction below, he has forfeited his claim that it was error for the court not to so instruct."].)[2]

Moreover, Ward argues that the trial court should have given the jury an instruction "that although some of the evidence may have been cross-admissible between different counts for specified purposes, they could not amalgamate the evidences [*sic*] to conclude that [Ward] was a person of bad character who was wont to commit burglary type offenses and thus likely committed each of the alleged burglaries in this case." Again, the fact that the jury convicted Ward on only two of the six counts strongly indicates that the jury did not amalgamate the evidence in this manner. (*People v. Smith*, *supra*, 30 Cal.4th at p. 617.)

### C. *Ineffective Assistance of Counsel*

Ward asserts that his counsel's failure to request a limiting instruction deprived him of the effective assistance of counsel. "'To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*In re Roberts* (2003) 29 Cal.4th 726, 744-745; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674];

---

[2]    Ward argues that we should not deem defense counsel's acquiescence in the trial court's response a forfeiture because the trial court's decision to "reinstruct with CALCRIM No. 3515 reasonably foreclosed any further request on counsel's part and any further request would have been futile." The record does not support this argument. The trial court was open and amenable to a request for a limiting instruction; the court even invited defense counsel to propose one.

10

*People v. Huggins* (2006) 38 Cal.4th 175, 205-206.) "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656; see *People v. Williams* (1988) 44 Cal.3d 883, 933 ["A factual basis, not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance of counsel."]; *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008 ["It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable probability' that absent the errors the result would have been different."].)

Here, the evidence as to the various counts against Ward was cross-admissible to prove motive, modus operandi, and intent. (Evid. Code, § 1101, subd. (b).) Defense counsel focused her argument on the differences between the counts and how they did not reveal a modus operandi. For example, the victims gave different descriptions of how each perpetrator acted and how each perpetrator entered the residence. Defense counsel emphasized "that this is six different cases for your consideration, that the MO, the modus operandi, whether it's demeanor, or whether it is method of entry, no more than two cases match up. . . . So that you must look at each separate count as a separate case. This strategy was effective: The jury convicted Ward on only two of the six counts.

Because the evidence was cross-admissible and the jury did not amalgamate the evidence to convict Ward on the basis of bad character rather than the evidence, Ward was not prejudiced by the absence of a limiting instruction. He therefore was not deprived of the effective assistance of counsel. (*People v. Maury*, *supra*, 30 Cal.4th at p. 398, fn. 11; *People v. Kraft*, *supra*, 23 Cal.4th at p. 1068.)


D.      *Presentence Custody Credits and Parole Revocation Fine*

Ward contends that the abstract of judgment does not accurately reflect the presentence custody credits to which he is entitled. The People agree that the abstract of judgment must be corrected. They are both right.

11

The trial court awarded Ward 283 days of actual credit plus 42 days of conduct credit but incorrectly added the two figures for a total of 324 days of credit. The abstract of judgment indicates that Ward received 324 days of credit, consisting of 282 days of actual credit and 42 days of conduct credit. The abstract of judgment should reflect the award of 283 days of actual credit and resulting total of 325 days of credit. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

The trial court also ordered Ward to pay a restitution fine pursuant to Penal Code section 1202.4, subdivision (b), in the amount of $800 and a parole revocation fine pursuant to Penal Code section 1202.45 in the amount of $200. Subdivision (a) of Penal Code section 1202.45 provides: "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." We therefore modify the judgment to provide an $800 parole revocation fine pursuant to Penal Code section 1202.45, subdivision (a).

## DISPOSITION

The judgment is modified to impose an $800 parole revocation fine pursuant to Penal Code section 1202.45, subdivision (a). As so modified, the judgment is affirmed. The trial court is directed to prepare a corrected abstract of judgment, also reflecting an award of 325 days of presentence custody credit, and to forward a copy to the Department of Corrections and Rehabilitation.

SEGAL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13